George Ralston's Estate. Appeal of George M. Ralston and John C. Ralston, Jr.

*Decedent's estate—Will—Family agreement.*

Where a testator directs that after the death of his widow his real estate shall be sold and the proceeds divided among his children " then living," the children who may be living at any particular time after the death of the testator and during the life of the widow, may enter into a valid agreement with each other that the shares of said children shall be regarded as vesting at the date of the death of testator divested of the survivorship clause contained in the will; and this may be done notwithstanding the fact that a child of testator has died between the date of the death of the testator and the date of the agreement, leaving to survive him a widow and child.

Argued Oct. 22, 1895. Appeal, No. 122, Oct. T., 1895, by George M. Ralston et al., from decree of O. C. Washington Co., May T., 1894, No. 46, overruling exceptions to auditor's report. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report.

The facts appear by the opinion of McILVAINE, P. J., which was as follows:

1. Facts found and admitted.

(*a*) George Ralston, Sr., late of this county, died November, 1842, testate. In his last will and testament, which was duly probated on the 25th day of November, 1842, he gave the full use and benefit of his " plantation " to his wife Isabella for her

natural life (or widowhood) for her support and maintenance as well as for the support of her children and mother. He further provided " that on the marriage or decease of his wife " (if after the death of his mother) his plantation should be put to sale for the highest and best price that could be obtained for it, " the proceeds to be equally divided among all my children then living share and share alike except Ralph, my eldest son I allow to get $100 more than his equal share."

(*b*) The testator left to survive him, his wife, Isabella Ralston, and five sons and three daughters. His wife never remarried. She died on the 29th day of June, 1893, almost fifty-one years after the date of the death of her husband.

A few days after the death of the widow letters of administration d. b. n. c. t. a. were issued to D. M. Campsey, who sold the " plantation " mentioned in the will, and the balance found to be in his hands, after he had settled his account, was distributed by the auditor, to whose report the exceptions now under consideration were filed.

(*c*) The only children of George Ralston, Sr., who were living at the date of their mother's death, were Martha Ralston, intermarried with Jas. H. Meloy, Elizabeth Ralston, widow of T. H. George, deceased, and John C. Ralston, Sr.

(*d*) Prior to the first day of January, 1868, one daughter and two sons had died, and between that date and the date of the death of the widow, two sons, George Ralston, Jr., and Ralph Ralston died.

(*e*) On the first day of January, 1868, the five children then surviving, and the widow, entered into an agreement as follows :

" Article of agreement made this first day of January, in the year of our Lord, one thousand, eight hundred and sixty-eight, between the heirs of the estate of George Ralston, dec'd : Witnesseth, that since the will of the said George Ralston, dec'd, provided that the real estate should be sold at the death of his widow and the proceeds arising from the sale to be divided equally among his children then living, and since by such provision, should any one of the heirs die before the death of the widow or the sale of the property his share would fall back to the other heirs while his children would be excluded from any part of his share ; it is mutually agreed that the shares of said

children shall be regarded as vesting at the date of the death of said George Ralston for and divested of the survivorship clause set forth in said will; and that each of the children at the testator's death shall be regarded as fully seized and possessed of one share of the estate in fee simple.   And it is further agreed that any further or other assurance to fix the date of the vesting of the estate as of the date of the testator's death will be executed at any time by each or all of us.   In witness whereof the parties have hereunto affixed their signatures.

" Witness :—

| " John Jamison, | " Isabella Ralston, | [seal] |
| " W. R. Jamison, | " John Ralston, | [seal] |
| | " George Ralston, | [seal] |
| | " Lizzie Ralston, | [seal] |
| | " James H. Meloy, | [seal] |
| | " Martha Meloy. | [seal] " |

(*f*) On the 5th day of February, 1894, (after the death of the widow) Jas. H. Meloy and Martha Ralston Meloy, Elizabeth (Ralston) George and John C. Ralston, Sr., by a writing in due form of law, sold and conveyed the interests of Martha Ralston Meloy, Elizabeth Ralston George, and John C. Ralston, Sr., (the three surviving children of George Ralston, Sr.,) in the plantation and in the proceeds of the sale of the plantation mentioned in the testator's will to George Ralston (the 3d) and John C. Ralston, Jr., and they now except to the auditor's report because the auditor did not award to them the entire fund realized from the sale of said farm.   George Ralston the 3d and John C. Ralston, Jr., are sons of Ralph Ralston, dec'd.

[(*g*) George Ralston, Jr., one of the children of George Ralston, Sr., who signed the family agreement of January 1, 1868, on October 10, 1873, sold and conveyed his interest in this plantation and the proceeds of the sale thereof, to John Grimes and John Jamison.] [1]

On these facts, are the exceptants, George Ralston the 3d and John C. Ralston, Jr., sons of Ralph Ralston, deceased, (one of the sons who executed the family agreement) entitled to the whole of the fund for distribution?   This is the question for determination, for no other person is complaining of the dis-tribution made by the auditor.

If the family agreement of date January 1, 1868, is invalid, then the exceptants, as the assignees of grantees of the three children of George Ralston, Sr., who survived their mother would, in our opinion, be entitled to the whole of the fund for distribution.   But is it void?

At the date when this agreement was entered into there were but six persons (under the terms of the testator's will) interested in the plantation which was to be sold or in the proceeds of the sale thereof—the widow and the five children then surviving.   Those of George Ralston's children who were to take under his will were those only who survived his widow.   The five children then still living had an equitable contingent interest in the proceeds of the sale of the land, the three that were dead left no interest therein which descended to their heirs at law.   Their death took them out of the class that were to be benefited by this clause of the testator's will.   Each of the five children who were still living had an equal interest in the others which could only be defeated by death.   But would they all live longer than their mother, and if not, who should die before her and who should survive her were questions they could not answer.   With each one the question was, shall my interest be increased by the death of one or more of the others before my mother die, or shall I die before her and the others survive and my children be left without an inheritance.   I give my chance of having my share increased by the death of one of the others for the assured fact that my children will get my one fifth, if I die before my mother.   This evidently was the thought of each and led to mutual family agreement of January 1, 1868, and was a sufficient consideration to support such an agreement. [The agreement has all the requisites of a valid family agreement.   It tended to promote peace and harmony among the five children and their issue; it was made with a full understanding of all the facts and by all the parties equitably interested, and upon a sufficient consideration.]   (2) It settled the question of the distribution of the proceeds of the sale of the real estate after the death of the widow, which at the date of the agreement was in doubt because it could not be foretold whether all five of the children would survive the widow or not, and if not, who would and who would not.

But it is said that all the children of George Ralston, Sr.,

who died before the date of the agreement, to wit: January 1, 1868, did not die intestate, unmarried and without issue. A son and daughter, it is admitted, did so die, but James left a widow and one son, who both died intestate and without issue before the widow, but who were living at the date of the agreement. From this it is argued that the agreement is invalid for want of the necessary parties. It is said that at that time this widow and son of James had an interest in the estate under the intestate laws, and that if all five of the children of George Ralston, Sr., then alive should have died before the widow, that the proceeds of this farm would have been distributed under the intestate laws. Granting this to be true, the agreement entered into by the children then living in no way deprived the widow and child of the deceased son of the testator of their rights. For, without an agreement by and between the five children, this widow and child were entitled to nothing out of the proceeds of the plantation if any of the five survived. The effect of the agreement was simply to strike out of the will the clause of survivorship, and the widow and child of the deceased son of the testator surely had no interests that would be subserved by allowing that clause in the will to remain. The two words in the testator's will, to wit: "then living," which the agreement sought to strike out of it were the very words that deprived the widow and child of the deceased son of any interest in the proceeds now for distribution; and how the exceptants, either as sons of Ralph Ralston, deceased, or as the owners by purchase of the interests of Mrs. Meloy, Mrs. George and John C. Ralston, Sr., can complain of the auditor's finding that this was a valid family agreement, I cannot see.

On the whole case as presented to us at the argument, we are of opinion:

1. That the order of the testator that his plantation should be sold at the death of his widow, and the proceeds distributed among his children then living, worked an equitable conversion, and that the question before us is simply one of distribution.

2. That the words "then living" refer to the death of the widow and not to the death of the testator, and that the eight children living at the death of the testator had not a vested but only an equitable contingent interest in the proceeds that would be for distribution at the death of the widow

3. That on January 1, 1868, three of the children of the testator having died, the five surviving children at that date were all the persons who had any interest in the question of distribution after the death of the widow, and that the widow and child of the deceased son, James Ralston, had no such interest in the subject-matter of the agreement of that date as to make them necessary parties thereto.

4. [That the agreement of January 1, 1868, is a valid family arrangement that in equity should be enforced in the distribution of the funds now being made, and that the exceptants were awarded by the auditor all they are entitled to under said agreement, and that they have no standing to object to the distribution made except so far as it affects their own interest. One son and one daughter of George Ralston, Sr., had died before the date of the agreement, unmarried and without issue, and of course the agreement could not in any way be construed as relating to them. James, another son, was also dead at that time, but left to survive him a son, and granting, as contended by exceptants, that the agreement of the five surviving children contemplated a participation of that child in the distribution of the fund at the death of the widow with the children of any of the five that might die, still we do not see how the exceptants can complain that this child's heirs, if it had any, were not recognized by the auditor, when they received all they were entitled to. It appears that three of the children of George Ralston, Sr., died before January 1, 1868, and that the widow and son of one of them died before the widow, Isabella Ralston, and it must be presumed, in the absence of testimony to the contrary, that any interest that would have vested in them under the terms of the agreement or otherwise, was at the date of the distribution lapsed, or was included in the five interests that the auditor recognized in the distribution.] [3]

[And now January 25, 1895, exceptions to auditor's report overruled and the report confirmed absolutely.] [4, 5]

*Errors assigned* were (1–5) portions of opinion as above, quoting them.

*T. F. Birch*, for appellants.—The land in this case did not vest in the heirs by descent, but in the executor from the plain

intention of the testator expressed in his will. He had no intention to die intestate as to any part of his estate. The heirs could have by unanimous consent elected to take the property as land instead of the proceeds but this was not done, neither was it possible at the time that the agreement was entered into to have the unanimous consent of all the heirs, for the reason that some of them were dead, leaving issue, and others without. To claim that the survivors were the heirs of the deceased issue of George Ralston, the testator, would be to allow intestacy as to that part of the estate descending to him, or to alter the testator's plain intention, which is beyond their power to do, and which they have not done by the terms of this agreement: Brown & Sterrett's App., 27 Pa. 62; Evans's App., 63 Pa. 183.

Another important element to make this agreement binding was the consent of the executor in whom the estate vested by the will of the testator: Beatty v. Byers, 18 Pa. 105.

Grimes and Jamison could have recovered no judgment for damages against George Ralston, their vendor, for a breach of the covenant contained in his deed to them of his interest in his father's estate, which would have been a lien against that interest had he survived his mother, widow of the testator. It was personalty. The legal title was in the executor. The land could not have been taken in execution on such a judgment: Stuck v. Mackey, 4 W. & S. 196; Brownfield v. Mackey, 27 Pa. 320; Brolaskey v. Gally, 51 Pa. 509; Gally's Est., 6 Phila. 75; Evans's App., 63 Pa. 183.

*R. W. Irwin*, for appellees.—The whole case turns upon the simple question as to whether there was a valid family agreement. It is a contract under seal, and the seal imports a consideration: Storm v. U. S., 94 U. S. 76; Dorr v. Munsell, 13 Johns. 431; Paige v. Parker, 8 Gray, 213; Candor's App., 27 Pa. 119; Wilen's App., 105 Pa. 121.

PER CURIAM, November 4, 1895:

All that need be said in relation to the questions involved in this appeal will be found in the clear, concise and convincing opinion of the learned judge of the court below; and on it we think the decree should be affirmed.

Decree affirmed and appeal dismissed with costs to be paid by the appellants.