## Estate of Isaac Ford, deceased. Appeal of Lizzie F. Richards, Sallie F. Haines, Ella M. Adams, H. Adella Massey, Mary A. Bosler, Gertrude Turner, Lillian V. Turner, William M. Turner, a minor, by his Guardian, Paul A. Davis, Jr., and Joseph F. Turner.

*Will—Trusts and trustees—Family settlement—Devastavit.*

Testator gave his residuary estate to his children. Shortly before his death he orally stated that it was his intention that his children should have only the income of their shares for life. One of the sons was named an executor and trustee of the will. After testator's death all of the children united in an agreement reciting the oral statement made by testator, and declaring that they held their respective shares in trust for themselves for life, and from their respective deaths for their respective children. Many years afterwards the executor and trustee misappropriated a very large amount of the funds of testator's estate. *Held,* (1) that the agreement was a valid one, based upon sufficient consideration; (2) that the limitations to the children of testator's children under the agreement were to be regarded as if the written will had expressed them in terms ; (3) that the children of the defaulting trustee could not be compelled to make good the devastavit out of their share.

Argued March 28, 1898. Appeal, No. 290, Jan. T., 1897, by Lizzie F. Richards et al., from decree of O. C. Phila. Co., Octo-

ber T., 1878, No. 34, dismissing exceptions to adjudication.
Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ.
Affirmed.

Exceptions to adjudication.

The facts appear by the adjudication by PENROSE, J., which
was as follows:

The decedent died March 6, 1876. By his will, executed two
days before his death, he devised certain real estate to his wife,
Amanda Ford, for life, directing also that one third of the
income of his residuary estate should be paid to her, and gave
$20,000 absolutely to his son, Henry C. Ford, and to each
of his daughters, Hannah A. Turner, Sallie Ford and Lizzie
Ford; $10,000 to the trustees of Crozer Theological Seminary,
in trust, as there set forth; and $1,000 to the trustees of the
Fifth Baptist Church of Philadelphia; one fifth "of the remain-
ing two thirds of income to" Henry C. Ford and one fifth each
to Hannah A. Turner, Sallie Ford and Lizzie Ford "and to
their heirs." The remaining fifth of two thirds of the income
of the residuary estate was given to Amanda Ford and Henry C.
Ford in trust "to invest . . . . for the benefit of" his son Isaac
Albert Ford, described as being of "unsound mind and unfit
to take charge of his share of income," and if he dies without
issue and not having gained his reason "his accumulated share
to revert to" the testator's other children or their heirs; and
"in the event of the decease of any of my children leaving no
issue . . . . the share of income of such decedent to be equally
divided among my surviving children or their heirs."

Mrs. Amanda Ford and Henry C. Ford were appointed exec-
utors, and letters testamentary were duly granted to them by
the register.

On November 16, 1876, Mrs. Amanda Ford, Henry C. Ford
and Emily his wife, William M. Turner and Hannah A. Turner
his wife, Sallie Ford and Lizzie Ford, executed, under their hands
and seals, an instrument in writing by which, after reciting the
provisions of the will as to the income of the residuary estate, the
declarations of the testator two days after its execution that he
"intended by said provisions that his said children should enjoy
and control only the income of their said respective one fifth

shares for their respective lives," the charitable gifts and the wish of the parties that they should be paid, notwithstanding the invalidity caused by the death of the testator within a calendar month after the execution of the will, reciting further that " the said Amanda Ford, in consideration of this agreement and in lieu and waiver of her right of election to claim any interest in the property and estate of Isaac Ford, deceased, otherwise than under his said will and this agreement, has agreed to receive," and the other parties to assign to her, all their right, etc., in certain real estate and personal property there mentioned—they, the said children of the testator, with the wife of Henry C. Ford and the husband of Mrs. Turner, " in consideration of the premises," granted, etc., to Mrs. Ford, in fee, the real estate mentioned, and assigned the said personal property. Provision was also made for the payment of the charitable gifts, and further as follows:

"That the said Henry C. Ford and Emily his wife, William M. Turner and Hannah A. his wife, Sallie Ford and Lizzie Ford, do hereby acknowledge, testify, declare and agree that we hold the residue of our respective said two fifteenths shares of the residue of the property and estate of Isaac Ford . . . . in trust to and for the only proper use and behoof of ourselves for our respective lives and from and immediately after our respective deaths to and for the only proper use and behoof of such of our respective children as shall then be living at our respective deaths and the issue of such children as may be then deceased, their heirs . . . . and assigns forever, in equal shares as tenants in common . . . .; and in case either of us should die without leaving him or her surviving a child, children or issue of any deceased child or children, then to and for the only proper use and behoof of our respective right heirs, so, however, that the share of Isaac Albert Ford, as such right heir therein, shall go to the trustees and be under and subject to the trusts and limitations declared in said will of and concerning his devise and bequest therein."

Various accounts were filed by the executors and trustees, viz : in November, 1890, May 1, 1894, and March 27, 1896, which were duly adjudicated, and in the interval between the account of 1894 and that of 1896, it was discovered that Henry C. Ford had misappropriated funds of the estate to the amount

of about $87,000. He was discharged from the executorship and trusteeship, May 2, 1896, and on November 21, 1896, the present accountant, the Fidelity Insurance, etc., Company was appointed "trustee in place of Henry C. Ford, trustee under the will of Isaac Ford, deceased, of the trust property and estate set forth in the adjudication made May 8, 1896, and the schedule of distribution thereunder."

Mrs. Turner died, as represented in the petition by Henry C. Ford for his discharge, in September, 1891, leaving seven children, as there set forth. Sallie Ford is now the wife of Hamilton C. Haines, and Lizzie Ford the wife of Horace E. Richards.

Henry C. Ford, as further represented, died August 17, 1896, leaving four children, Frank R. Ford, Isaac Ford, Harry H. Ford and Ralph L. Ford (a minor having no guardian). He also left a wife, Savannah Ford.

The account was admitted to be correct, and the only question submitted for the consideration of the court was the validity of the deed of November 16, 1876, so far as concerns the interest limited to the children of Henry C. Ford at his death; it being contended by Mr. Johnson that Henry C. Ford being trustee under the will of the testator for the other parties to the agreement, the latter were not bound by its stipulations so far as his share of the estate was concerned; and also that as against such other parties the limitation to his children was simply a voluntary conveyance, void as to then existing creditors.

It must, perhaps, be conceded that the children of the testator, under the gift in the will of a share of income to them, respectively, and "their heirs," were entitled absolutely to a corresponding share of the corpus of the estate; but in that case, if any trust was created by the will it was only by reason of the direction "to pay" to the widow one third of the income, and the necessity that the whole estate should be held in order that she might have one third of the income and not the income of one third: Wilen's Appeal, 105 Pa. 121. The trust was purely for the benefit of the widow, and the relation of trustee and cestui que trust can scarcely be said to have existed between Henry C. Ford and the other children of the testator. Moreover, the disability of a trustee to contract with his cestuis que trust relates only to the trust property, not to the individual

estate of the trustee himself, even though he derives title to the latter under the instrument creating a trust for the others ; and in the present case Henry C. Ford was neither buying from or selling to his cestuis que trust—assuming that under the will they were such. He was simply dealing with an estate of which he was the absolute owner, and which the other persons taking under the will could not in any manner interfere with or deprive him of. Of course, those whose rights had their origin in the agreement of November 16, 1876, viz: the children born or to be born, of the original parties, took in strict subordination to all its provisions, and cannot now set up or allege disability growing out of a trust relation which did not begin until the transaction was fully consummated.

With regard to the suggestion that the transaction is to be regarded as a voluntary conveyance, in fraud of the rights of the beneficiaries under the will of the decedent, but little need be said.

That legatees or cestuis que trust bear such a relation to an executor or trustee that any voluntary settlement he may make in favor of his wife or children is void as to them, though he has not committed and does not intend to commit a devastavit, is a startling proposition. His liability is that of depositary or bailee, not that of debtor. It is wholly unlike the case of the maker of a promissory note not yet matured, who is a debtor from the beginning, though the time of payment is suspended. Debitum in præsenti solvendum in futuro. In the event of his insolvency or bankruptcy the legatees or cestuis que trust— there having been no devastavit—would not share in the distribution of his estate, nor would they be scheduled as creditors. And if it be conceded that they are creditors, as the voluntary conveyance by their debtor is only invalid as to them, they may waive their rights and agree that it shall be made, as in the present case they have done, by uniting in the conveyance and binding themselves by seal.

But the transaction is not to be regarded as in any sense a voluntary conveyance, and it is admitted that when it was entered into no fraud was contemplated by Henry C. Ford, who had not then, nor did he for many years after, become delinquent in the management of the estate. It was simply the carrying into execution of what all of the parties believed and what

they asserted in the most solemn manner was the will of the owner of the estate with which they were dealing. They were all of full age and had the right to waive the benefit of the law requiring wills to be in writing. The written will was obscurely expressed, but the testator had told them what he intended, and this they agreed should be done, irrespective of technicalities or rules of interpretation. The agreement of the others to this effect was a valid consideration for the agreement of each; and the limitations to the children of the first takers are to be regarded as if the written will had expressed them in terms.

In the opinion of the auditing judge the estate given to the children of Henry C. Ford cannot, except by their voluntary act, be taken or in any way be made liable for his debt to the trust estate, nor can they be deprived of it on the ground that it was created by a conveyance from their father not supported by consideration.

The balance of principal shown by the supplemental account, composed as there indicated, $122,623.17, will be held, and the balance of income, $2,448.33, less clerk's fees, $20.00, applied in accordance with the provisions of the will of the testator and the agreement of November 16, 1876; the estate being held in trust during the lifetime of Mrs. Amanda Ford in order that she may receive the portion of income to which she is so entitled.

The certificate of counsel for the accountant as to the securities belonging to the trust estate, as set forth in said account, will be presented to the auditing judge in accordance with the rule in such case provided; such certificate, when approved, to be annexed and made part of this adjudication.

It is ordered and adjudged that the account be confirmed nisi on payment of clerk's fees.

The orphans' court dismissed exceptions to the adjudication.

*Errors assigned* were in dismissing exceptions to adjudication.

*John G. Johnson*, for appellants.—Despite the deed of November 16, 1876, the share Henry C. Ford was entitled to take, as trustee for himself for life and for his children as remaindermen, was nothing more than the amount due under the will of his father after settlement of his accounts as executor and trustee.

It was impossible for Henry C. Ford, by a voluntary deed, so to settle his estate at a time when a fiduciary duty existed, as to deprive any persons interested in its performance, upon breach of such duty, of their right to be paid thereout: Kerr on Frauds, 198; Thomson v. Dougherty, 12 S. & R. 448; Monroe v. Smith, 79 Pa. 461; Buckley v. Duff, 114 Pa. 603; Harlan v. Maglaughlin, 90 Pa. 293; Kimble v. Smith, 95 Pa. 72; Thompson v. Allen, 103 Pa. 48; Knight v. Kidder, 1 Atl. Rep. 143.

The deed of November 16, 1876, was a voluntary settlement without consideration.

The appellants are not estopped by virtue of said deed from claiming payment out of Henry C. Ford's share of his father's estate.

*George L. Crawford*, of *Crawford, Loughlin & Dallas*, for appellees.—In Pennsylvania, a moral obligation, which would be a legal obligation but for some positive rule of law for general benefit, which might be waived by the party, as to pay a debt barred by the statute of limitations, or discharged as to the debt and not the remedy only under a bankruptcy law, or a debt, not for necessaries, of an infant, or a married woman, or a verbal promise or grant which the law requires to be in writing, is a valuable consideration for an express promise or grant: Hemphill v. McClimans, 24 Pa. 367; Stebbins v. Crawford, 92 Pa. 289; Leonard v. Duffin, 94 Pa. 218; Bentley v. Lamb, 112 Pa. 484; Hobough v. Murphy, 114 Pa. 358; Brooks v. The Bank, 125 Pa. 394; Holden v. Banes, 140 Pa. 63; Kelly v. Eby, 141 Pa. 176; Bailey v. Philadelphia, 167 Pa. 573; Hare on Contracts, 262.

PER CURIAM, April 11, 1898:

We are entirely satisfied with the disposition of this case as made by the learned auditing judge and confirmed by the court below.   We therefore affirm the decree upon the opinion of the auditing judge.

Decree affirmed and appeal dismissed at the cost of the appellants.