# DeVore's Estate.

*Decedent's estates—Trust funds—Life estate—Assignment by remaindermen—Sufficiency.*

An agreement among the legatees of a testator, assigning all rights which the assignors had in the trust fund contingent on the death

Syllabus—Opinion of the Court Below.    [89 Pa. Superior Ct.
of the cestui que trust in favor of a life tenant is not forbidden by statute or contrary to public policy.

The legatees, who had an interest in the estate contingent on the death of life tenant could lawfully dispose of it. The form of the agreement warranted the conclusion that they were aware of the nature of it and intended to execute it for the purposes therein expressed.

Particular forms of expression are not required; any language which indicates the intention is sufficient. The parties being members of a family confronted by a prospect of a will contest, and desiring to avoid an inequality of division of the estate, could mutually agree to enlarge the interest of one of the legatees by surrendering their respective contingent remainders.

Argued April 28, 1925. Appeal No. 63, April T., 1925, by Colonial Trust Company, Trustee, from decree of O. C. Allegheny County, March T., 1923, No. 291, in the Estate of William H. DeVore, deceased. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Exceptions to adjudication. Before TRIMBLE, J.

The facts are stated in the opinion of the court below dismissing the exceptions.

The question involved is whether remaindermen made a valid equitable assignment of a share of the residuary estate of the testator.

The testator by his last will and testament created two separate use trusts for his married daughter, Henrietta Culp, one of which consisted of a bequest of five thousand dollars. He made pecuniary bequests and specific devises to other members of his family absolutely, and then bequeathed and devised the remainder of his estate in trust, to continue for seven years after his death; appointed a trustee to sell the real estate, and at the termination of the trust directed a division of the corpus equally among all of his children absolutely, except Henrietta. With respect to her the second trust is created, and her interests are "to be retained by the Fidelity Title and Trust Company in trust to invest the same and pay from the net

income thereof semi-annually for the sole and separate use'' of his daughter, "free from all liability, control or debts of her husband, and at his death the said share to go to her absolutely. If she should die before her said husband then said share to be divided among my other children share and share alike.''

The testator died October 20, 1905, and his will was duly probated. Twenty days thereafter, to wit, on the 10th of November, 1905, all of his legatees and devisees, being the testator's widow and children, with the husbands and wives of those who were married, entered into a written agreement under seal, but without a valuable consideration passing between the parties as an inducement for its execution, binding upon each and every one of the parties, their heirs, executors, administrators and assigns, as parties of the first and second part, his daughter, Henrietta Culp, the above named *cestui que* trust, and her husband being the latter. This agreement recites the two paragraphs of the will wherein the trust estates are created for Henrietta Culp and that, ''It is the desire of the parties hereto that the said Henrietta Culp shall have, possess and enjoy her said bequest more fully, and to a greater extent than is prescribed in said second and the quoted portion of the fourteenth paragraphs (which was that part of the paragraph creating the separate use trust for the party of the second part), and shall possess and enjoy the same as fully as similar bequests to other heirs are provided to be enjoyed.'' It is covenanted between these parties that of ''the said bequest'' (that is, the bequest under her father's will) to Henrietta, she shall receive one thousand dollars at the expiration of one year from the death of the decedent, another in two years, another in three years, and two thousand dollars in four years, thus making up the five thousand dollars, the amount of the bequest in trust to her. The Fidelity Title & Trust Company is authorized, empowered and directed

"to pay out of the funds of the estate the said sums" to her when and as in said contracts provided, and that these payments "shall be in lieu and take the place of the payments and terms originally provided in the second paragraph of said will." The parties then agreed that the Fidelity Title & Trust Company, trustee, should ignore and disregard the second bequest in trust to the decedent's daughter Henrietta, but that said legatee should have "her full proportionate share of said estate, in all respects as though no provisions were contained......for the retention of said share in trust," and as though the trust provision had been omitted from the will. The trustee is "released, freed and discharged of and from all responsibility or liability whatsoever to the parties......by reason of the making......payments to Henrietta Culp as herein provided and directed." And, finally, Henrietta Culp and her husband assigned and transferred to the Fidelity Title & Trust Company, trustee of the residuary estate "all the right, title and interest" of Henrietta "in and to the bequest of five thousand dollars, and discharged the said trustee from all responsibility and liability to the payments to be made to her under the provisions of her father's will.

After the death of William H. DeVore, and within the twenty days before the contract was signed by the parties, Henrietta Culp had signified an intention of contesting her father's will on the ground of undue influence exerted by her brother-in-law upon her father at the time of the execution of the will, and the contract was entered into by all of the parties as a family settlement, and Henrietta Culp did not exercise her right to institute a contest because of the execution of the contract.

The Fidelity Title & Trust Company filed five accounts as executor, beginning in 1906 and ending in 1922, and as trustee to sell real estate filed five additional accounts, beginning in 1920 and ending in 1922.

No claim was ever presented by Henrietta Culp or any person representing her for payment to her of any sum whatever which she might have claimed under the covenants of the contract. The trustee did not pay to the *cestui que* trust any part of the corpus and was never requested to make payment; but it punctually paid all of the income to Henrietta Culp and carried out all the terms of the trust in accordance with the testamentary direction until her death, which occurred on October 31, 1922, and has filed its account bringing into court the corpus of both trust estates for distribution. The balance is shown to be $11,289.53.

Henrietta Culp left to survive her a husband and two children; the husband has been appointed administrator of her estate and claims that the whole amount of the balance should be distributed to him under the covenants and conditions of the above agreement.

The sole and separate use trust created in the will of William H. DeVore could not be set aside by any agreement of all the parties interested under his will. This was a provision which he made for his daughter; it was lawful; the property belonged to the decedent, and in his lifetime he could do with it as he pleased, so, he could make this lawful disposition by his will. The only question remaining is whether the remaindermen, whose rights were fixed by the will of William H. DeVore made an equitable assignment of all their interest in his estate to their sister.

The intention expressed in the contract was that Henrietta should enjoy her bequest more fully and to a greater extent than provided for in the will, and possess and enjoy the same as fully as similar bequests to the other heirs. To carry out this intent the parties agreed and directed payments to be made to her by the trustee out of the funds of the estate in lieu of the payments and terms of the will; that the trust covering her share of the residue be removed and the trustee directed to apportion and pay it to her, and

Henrietta assigned her beneficial interest in her bequest to the trustee to aid in the substituted scheme of distribution.

The inducement to the agreement was the settlement of a family dispute; the consideration was the waiver of the contest over the decedent's will, and the purpose was equality of distribution among all the parties. We do not know why she made no demands for the termination of the trust and distribution under the contract. If she was satisfied that her children would inherit an absolute estate by reason of the contract assigning to her the remainder which vested under the will in the parties to the contract, and if she treated this as an assignment of all their interest in the event of dying before her husband, she told no person about her thought or desire, and she performed no act which would indicate what her belief was. The other parties never told her, nor does the contract say that after giving up her right to contest her father's will she must assert her rights and attempts to nullify the testamentary trust created for her. But now the parties who succeeded to the principal of the trust by her intestacy, her husband and two children, are told that the equality of distribution clearly expressed and intended in the contract was not to be had if Henrietta were guilty of any laches, and she was by accepting the income from the trustee and failing to terminate the trust for her, and they are also told that her contract was void *ab initio*, because there was no valuable consideration; that nothing could be accomplished by the contract because the trust could not be terminated; that it was an impossible undertaking, and moreover it was abandoned. The conclusion we must arrive at if we sustain the distribution requested by the living parties to the contract and the children of others who are dead, is that the contract was a snare for Henrietta Culp; that her death has prevented the estate from vesting in any other person than themselves, and we

must say that her children and husband cannot succeed to any inheritance under the will of her father because a strict construction of the law demands that her share be given to others.

The declared intention is equality of distribution; the desired interpretation is inequality. We will not be keen to construe a contract and bring about a result which was not intended. Family agreements settling disputes are much favored in the law, and when parties who are entitled to an estate, no matter what its nature may be, enter into an agreement for its disposal and accomplish a family settlement the courts will lend their aid, because the property involved is no longer that of the testator, but it belongs to them. In Henderson v. Bishop, 250 Pa., 484, the Supreme Court said: "The destruction of a will by a testator himself is the subject of legislation: Section 13, Act of April 8, 1833, P. L. 249; but an agreement, after a testator's death, by all parties interested in his will, is quite a different matter, for, if *sui juris* they can do as they please with what the will gives them." Mr. DeVore's will gave to the parties to this contract, other than Henrietta Culp, a contingent remainder in that part of the corpus which was left in trust for her, and there would be no doubt that this would be assignable; Baylor vs. Com., 40 Pa. 37; Cressman's App., 42 Pa. 154; Ruple v. Bindly, 91 Pa. 296; Baeder's Est., 224 Pa. 454; and we believe that when the parties agreed that Henrietta should possess and enjoy her bequest as fully as similar bequests to the other heirs, which was induced by waiver of a contest of the will, the parties who agreed thereto have no interest as legatees which they can assert in this litigation, because the agreement operated as an assignment.

While there are no express terms about assigning contingent remainders, certainly there are no reservations of any contingent interests by those who insist that an assignment was not made. In *Wood's Est.,*

243 Pa. 211, it is said: "True no particular words or form of instrument is necessary to constitute a valid assignment; but appropriate words which in themselves are so unequivocally; expressive of an intention to transfer property are of such common usage, that when these are not employed in a transaction of this kind, a very reasonable inference would be that they were not employed because not expressive of the intention of the parties. In the next place, the idea of assignment is essentially that of the transfer of property, in which the assignor parts with the whole property in the thing assigned." That language was truly applicable in that case because there was a reservation in that family agreement which permitted revocation. The property had not passed from the assignors beyond their power to reclaim. Where there is an equitable assignment "the assignor must not retain any control over the fund, any authority to collect, or any power of revocation. If he does, it is fatal to the claim of the assignee. The transfer must be of such a character that the fund holder can safely pay and is compellable to do so, though forbidden by the assignor:" Christmas v. Russell, 81 U. S. 69, 70, cited in Wood's Est. It is admitted that the trustee or fund holder could not have been compelled to pay to Henrietta Culp in her lifetime the principal of the trust except upon the death of her husband. But if this fund holder had paid the fund to her, none of the parties who are now claiming it would be permitted to demand an accounting. The agreement would be a clear estoppel.

The argument against an assignment is based on the narrow view that there was no intention to do anything but to destroy the trust. "The agreement was executed for the avowed purpose of striking down the separate use trust and securing to Henrietta Culp the full unrestricted use and enjoyment of the legacy instead of the income thereof:" Claimant's Brief. If

she was to enjoy the legacy without restriction, these parties must first assign their contingent remainder, and if this was not a part of the intent they did not do so and now have an advantage which they might have lost if the will had been contested. But it is believed that the real intent of the parties was a release of all their interest in that part of the estate which her father had covered with a trust for her.

There is much argument made about the want of consideration, and that equity will not enforce a contract unless there is a valuable consideration. The law on this subject is expressed in Brenneman's Est., 17 Sup. Ct. 75: "An agreement in writing, under seal, based by its own recitals on a valuable consideration between brothers and sisters, the purpose of which is the equalization of the distribution of an estate, and therefore in the nature of a family settlement, is a binding and enforceable consideration." The reason for this is very clearly expressed in Meek v. Frantz, 171 Pa. 632, where it is said: "There is a well settled distinction between cases in which a valuable consideration was intended to pass, and therefore furnished the motive for entering into the contract, and cases in which such consideration was not contemplated by the parties. In the former failure of consideration is a defense, although the contract is under seal, while in the latter equity will not relieve against an instrument under seal, merely on the ground of want of consideration."

We believe that the justice of this case will be found in a liberal construction of the contract, and that its effect was an assignment and all the interests of the brothers and sisters of Henrietta Culp passed by the contract, which was induced by the settlement of a contemplated will contest, and distribution will be made to the administrator of Henrietta Culp.

## DECREE OF DISTRIBUTION.
### Filed April 29, 1924.

And now, to-wit, April 29th, 1924, this matter came up for hearing and distribution, at this Term, upon exceptions thereto, and testimony taken, and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed that the exceptions be, and the same are hereby dismissed and the account is confirmed absolutely.

And it is further ordered and decreed that the fund in the hands of the accountant, viz: $11,454.13 be paid in accordance with the following schedule of distribution, unless exceptions be filed hereto within ten days, or an appeal be taken herefrom within three weeks.

*Per Curiam.*

| | | |
|---|---:|---:|
| Balance per account    Corpus | $11,289.53 | |
| And accrued interest per Audit Stmt. Income | 164.60 | $11,454.13 |

| | | |
|---|---:|---:|
| To W. H. Culp, Admr. of the Estate of Henrietta Culp, dec'd. bal. viz: | | |
| Corpus | 11,289.53 | |
| Income | 164.60 | $11,454.13 |

Exceptants appealed.

*Error assigned* was the decree of the court.

*J. Roy Dickie*, of *Dickie, Kier & McCamey*, and with him *Leitch & Adelman*, for appellant.—The agreement between the legatees was an attempt to strike down a valid separate use trust: Siegwarth's Estate, 226 Pa. 591; Holbrook's Estate, 213 Pa. 93; Lancaster v.

Dolan, 1 Rawle 231; Thomas v. Folwell, 2 Wharton 11; Stewart's Estate, 253 Pa. 277, 281; Stafford's Estate, 258 Pa. 595.

The agreement could not be construed to operate as an equitable assignment, because not supported by a valuable consideration: 2 Ruling Case Law, page 614; Bispham's Principles of Equity (6th Edition), Section 373; Lennig's Estate, 182 Pa. 485; Whelen v. Phillips, 151 Pa. 312; Fritz's Estate, 160 Pa. 156; Kuhn's Estate, 163 Pa. 438; Dutton's Estate, 181 Pa. 426.

*Thomas F. Garrahan,* and with him *H. W. McIntosh,* for appellee.—The parties to the agreement were all sui juris, and could do what they pleased with what the will gives them: Henderson v. Bishop, 250 Pa. 484; Phillips v. Phillips, 8 Watts 195; Ralston's Estate, 172 Pa. 104; Brenneman's Estate, 17 Pa. Superior Court 75; East Lewisburg, etc., v. Marsh, 91 Pa. 100; Fett's Estate, 39 Pa. Superior Court 252; Bond v. Bunting, 78 Pa. 210; Day & Sharpe's Assigned Estate, 21 Pa. Superior Court 118; Moeser v. Schneider, 158 Pa. 412.

The claim was not barred by laches: Hall's Estate, 248 Pa. 218; Baeder's Estate, 224 Pa. 454; Bayer v. Com., 40 Pa. 37; Ruple v. Bindly, 91 Pa. 296; Price's Appeal, 54 Pa. 472; Montgomery's Appeal, 77 Pa. 370; 13 Corpus Juris 644.

OPINION BY HENDERSON, J., July 9, 1925:

The Orphans' Court held that the agreement among the legatees and devisees of the testator in favor of Henrietta Culp, a married daugther of the testator, was in effect an assignment of all of the interests of the brothers and sisters of Mrs. Culp in the legacy which the latter received through her father's will; the effect of which was to vest in her and her heirs all of the property with respect to which she took a life estate under the will. This conclusion was reached because the agreement was the settlement of a family

dispute; the consideration therefore being the waiver of a contest over the decedent's will; the object of the agreement being the creation of equality of distribution among all parties interested in the estate. The court correctly held that the agreement did not operate on the trust created in favor of the latter, for it was within the power of the testator to make such disposal of the property over which he then had control as he saw fit, and having made provision for the protection of the fund against the improvidence of the cestui que trust or her husband, it was not within the power of the other legatees to abrogate or modify that provision. The agreement however so far as it related to rights existing in the parties thereto was one not contrary to public policy nor forbidden by statute. The brothers and sisters who had an interest in Mrs. Culp's legacy contingent on her death during the life of her husband could lawfully dispose of it. They were all sui juris. The form of the agreement and the evidence taken fully warrant the conclusion that they were aware of the nature of the agreement and intended to execute it for the purposes therein expressed or necessarily inferable from the language of the instrument and the situation of the parties. That it was intended to create a waiver of any claim which the brothers and sisters had in the legacy to Mrs. Culp and to vest in her and her heirs all of the property involved in this proceeding seems evident. The words of the agreement are not those used in the formal assignment of a property right, but show the purpose of the parties. Particular forms of expression are not required; any language which indicates the intention is sufficient. The parties being members of a family confronted by a prospect of a will contest and desiring to avoid an inequality of division of the estate mutually agreed to enlarge the interest therein of a sister. This could only be done so far as the other parties were concerned by surrendering their respective contingent remainders. If they

did not purpose to do this their agreement had no meaning. They intended to relieve the legacy of Mrs. Culp from the contingency which affected it and to give it the same destination which it would have had if the trust had not existed. This they accomplished by the writing in question. Equity will support assignments of contingent interests and expectancies provided the agreements are fairly entered into and not against public policy: Day & Sharpe's Assigned Est., 21 Pa. Superior Ct. 118; Ralston's Est., 172 Pa. 104. It will be observed that the contracting parties had a present interest in the estate. The maker of the will was dead. The situation was different in Lennig's App., 182 Pa. 485, to which the appellants direct our attention. There the parties were agreeing about the property of the testatrix before her death. The contract had nothing therefore to operate on except a naked expectation. The will was subject to change by the testatrix at any time. The mutual promises of the parties here induced by the circumstances, constituted a sufficient consideration: Harter v. Bomberger, 47 Pa. 496; Ford's Est., 185 Pa. 420; Brenneman's Est., 17 Pa. Superior Ct. 75.

We are not impressed by the contention that the agreement cannot be supported because of laches. The present claimants are the husband and children of Mrs. Culp. Their right is asserted at the first opportunity after the death of the latter. This part of the decedent's estate is in court for the first time for distribution. The appellants have lost no right from lapse of time. As the agreement operated in favor of the heirs of Mrs. Culp, it is not apparent that there has not been reasonable diligence in asserting their right. The learned judge of the Orphans' Court has clearly and forcefully set forth the views of that court. Our discussion need not be further extended.

The decree is affirmed at the cost of the appellants.