## Hartman's Estate

*William A. Meyer*, for exceptants.

*J. E. Sugden, Jr.*, and *Carl W. Brueck*, for claimant.

MITCHELL, J., for the court en banc, January 26, 1942.—William C. Hartman, a veteran of the World War, received from the United States Government

12 $50 United States Government adjusted service bonds. On or about June 26, 1936, according to the testimony of Myrtle Mitchell, his fiancee, Hartman gave these bonds to her, saying "These are for you; I want you to have them." She said, "For me?" and he replied "Yes." Miss Mitchell placed these bonds in her sister's safe deposit box. There was written on the envelope containing the bonds, in Hartman's handwriting, "To Myrtle from Bill." Hartman died December 17, 1939, intestate, and letters of administration on his estate were issued to Ralph F. Hartman, his brother.

Miss Mitchell refused to surrender the bonds at the request of the administrator of the estate, and an order was made by this court on April 21, 1941, directing her to deliver the bonds to the administrator and allowing her to present her claim for the proceeds at the audit of the account of the administrator. The bonds were surrendered, and at the audit of the administrator's account on September 17, 1941, Miss Mitchell claimed the proceeds, the bonds having been redeemed by the administrator. The decree of the court distributed the proceeds to Miss Mitchell.

Clarence A. Hartman and Ralph F. Hartman, brothers of decedent, filed exceptions to the decree on the ground that bonds of this character issued to veterans as adjusted compensation under the Act of Congress of January 27, 1936, 38 U. S. C., sec. 686 (c), 49 Stat. at L. 1099, cannot be made the subject of gift or assignment. This act provides:

"The bonds . . . shall be redeemable at the option of the veteran or his estate. . . . Such bonds shall be issued under the authority and subject to the provisions of the Second Liberty Bond Act, as amended, and shall not be transferable, assignable, subject to attachment, levy, or seizure under any legal or equitable process and shall be payable only to the veteran or, in case of death or incompetence of the veteran, to the representative of his estate."

These bonds are a bounty or gift from the Government for services rendered in its defense. There are certain attributes or conditions accompanying the gift, all of which are for the benefit of the soldier to whom the bonds are given. The act above recited, as well as the previous Act of August 12, 1935, 49 Stat. at L. 607, provides the bonds shall not be assignable. Among the provisions of the Adjusted Compensation Act of January 27, 1936, are that the bonds shall not be transferable or assignable and shall be payable only to the veteran or, in case of the death or incompetence of the veteran, to the representative of his estate. In both of the above-recited acts of Congress it is set forth that these bonds are not subject to attachment, levy, or seizure under any legal or equitable process. It was the evident purpose of Congress to safeguard these gifts so that the benefit should accrue only to the veteran, and if he did not redeem the bonds during his lifetime his estate would be a channel through which the benefit would ultimately fall to his next of kin: Schmuckli's Estate, 341 Pa. 36.

The purpose of this gratuity, like war risk insurance, was to aid the soldier and his relatives within a limited class and, like the insurance, "is an earmarked fund that has impressed on it the quality given to it by the United States Government—the quality of a national donation, bounty, or gift for services in defense of the nation. The fund may be traced through the various agencies until it reaches its final destination in consummation of the original purpose for its creation. The badge of national obligation to a soldier protects it from liability for taxes, debts and the like; . . .

"Congress was not interested in setting up a fund for creditors and excisors": Fisher's Estate, 302 Pa. 516, 523.

The case of Diskin's Estate, 105 Pa. Superior Ct. 519, to which our attention is directed, seems not to govern the question now before us. In that case a gift

of postal savings certificates was involved, and the decision restated the law establishing gifts by the delivery of the property or the evidences of ownership thereof. While the postal savings certificates were marked "nonnegotiable—nontransferable," there were not the restrictions as in the law governing these bonds. The provisions of the Acts of Congress of August 12, 1935, and January 27, 1936, mentioned above, are exact and compel strict adherence to them. If under any previous act granting a bonus or gift to veterans there was danger of defeating the purpose of Congress, the act authorizing these bonds certainly makes secure to the donee the gift, even against his own deliberate attempt to dispose of it. Were it not for the prohibitions of the statute as above quoted, a valid gift in this case would be established.

It has been argued that, since a veteran could dispose of his bonds by will, he could make a conditional gift which would not take effect until after his death. In the case of a disposition by will the veteran would not part with his bond until his death and until then it would be available for his use. If he is permitted to give it away and surrender possession of the bond he could not avail himself of its benefits even though he so desired, which would defeat the purpose of the Government.

Consideration of all the circumstances makes it clear these bonds are a gift from the Government for the comfort and maintenance of the recipient, and it is plain the donor sought to safeguard the bonds from unfortunate occurrences which would impair the benefit to the veteran. There is nothing to prevent the Government in these cases from circumscribing and limiting its gift by any conditions and restrictions which it may believe essential to carry out its sole purpose of favoring the veteran and his next of kin: In re Ballard's Estate, 161 Misc. (N. Y.) 785.

In our opinion the proceeds of the bonds in question belong to the next of kin of decedent and should be so distributed.

Exceptions to the decree of distribution were filed by J. J. Hoffman, whose claim against the estate for the rental of a garage was disallowed. The automobile which was stored in the garage had been given to Miss Myrtle Mitchell by decedent before his death, and she later placed it in the garage. Decedent did not own the car when the rental accrued, and his estate is not responsible for the rent.

The exceptions will be dismissed.

TRIMBLE, P. J., dissenting.—It will be seen by Judge Mitchell's opinion for the majority of the court that William C. Hartman made a gift of 12 $50 United States Government adjusted service bonds to Myrtle Mitchell, his fiancee. All the elements which constitute a gift were present and we all agree that, insofar as William C. Hartman was able to make a gift of these bonds, it was complete. The majority of the court hold that the act of Congress prevents a gift of adjusted service bonds. No person, reading that act, could hold that a donee of Hartman could collect the money on the bonds; no person but Hartman himself or his fiduciary could collect the money represented by the bonds. The act of Congress is specific in limiting the right to redeem to the soldier during his lifetime and, after his death, to his estate. This is emphasized by prohibiting the transfer or assignment of the bonds or their attachment, levy, or seizure under any legal or equitable process, and by declaring that they shall be payable only to the veteran or, in case of the death or incompetence of the veteran, to the representative of his estate. So much is clear, a gift by Hartman himself and an impossibility of redemption by the donee during his lifetime or after his death. But the act is silent as to the disposition of the proceeds after redemption by the fiduciary. It was held that they are not taxable by the State: Schmuckli's Estate, supra, where brothers, as next of kin, were the beneficiaries and only parties interested under the intestate laws of Pennsylvania.

Who would say that Hartman could not have made a will and given the proceeds of these bonds to his fiancee? There is nothing in Schmuckli's Estate which would bar distribution when so directed. When the bonds are redeemed by the fiduciary the act of Congress has been complied with and, as in Diskin's Estate, supra, p. 522, we may say that, if the donee was confronted by any difficulty in receiving the cash value of the certificates, that was a matter to be solved by Myrtle Mitchell, Hartman's donee.

"She was entitled to whatever value they possessed in her hands: Basket v. Haskell, 107 U. S. 202,* 27 L. Ed. 500. This is not a serious matter, however, for after the death of the decedent, his son, John, called upon Mrs. Bundshuh and requested delivery of the certificates to him as executor. She gave possession of them to him upon receiving a written receipt that they were delivered so that they could be collected; Mrs. Bundshuh did not thereby relinquish her claim. The statement made by the learned court below that the proceeds of the postal certificates were paid to the executor and accounted for was alleged by the appellant to be inaccurate, but there seems to be justification for that conclusion, for his account, as well as the schedule of distribution, indicates that this alleged asset was treated as cash."

There is no essential difference between the act of Congress regulating the redemption of adjusted service bonds and the act of that authority in regulating the transmission of postal savings certificates which were nonnegotiable and nontransferable. If there is any difference it must be found in the fact that these adjusted service bonds are not assignable and not subject to attachment, levy, or seizure. Both acts bar redemption of the bonds by any other owner except the person to whom they are issued. If there is any exception to this

---

* Basket v. Hassell, 107 U. S. 602. This case emphasizes the vesting of the title in the donee to effect a gift.

it would be for the benefit of a holder who became incompetent; then it is probable that redemption could be made by the legal representative of the holder.

But the act of Congress is silent as to the transfer of title to the bonds, as is the act of regulating the postal savings certificates. There is no implication that a holder of adjusted service bonds could not donate the proceeds to one of his kin instead of another by a trust inter vivos or by will and if he may do that he also may do it by a gift, as was done in Diskin's Estate, supra, and attempted here. The transition of the bonds to decedent's fiancee was not prohibited by the act of Congress. She became vested of whatever title he could give. Property transferred by special warranty may be worthless but it conveys whatever interest the grantor had. In DeVore's Estate, 89 Pa. Superior Ct. 47, it was held that there may be an assignment of contingent interests following a trust for the sole and separate use of the sister of the assignors. The difficulties of redemption, if any, are for the donee or legatee as in Diskin's Estate. Of course, if Hartman died intestate as to these bonds, then the act of Congress must be complied with. Such an interpretation invites grotesque results. A decedent's kin, whether a cousin of far-out degree, a lunatic confined in an insane asylum, or a criminal in a penal institution, will take the proceeds of the bonds after payment of debts even though decedent never knew them or, if he did, they were in no way dependent on him or could in no manner be considered objects of his bounty, or if kinless escheat to the United States must be the climax. The act of Congress must be complied with even though Hartman had vested the title to his bonds in Myrtle Mitchell, his fiancee, by their transfer to her possession by him as a gift and intended as a gift, but if he had redeemed his bonds the validity of his gift to her of the cash could not be questioned.

It seems to me that the owner of the bonds, who

earned them by his service, should not be thwarted in his attempt to dispose of his title to that which he owned, when not expressly prohibited. Diskin's Estate, supra, is a safe guide for the entry of the decree about to be reversed.

