# Sinnott's Estate.

*Executors and administrators—Compensation—Commissions.*

A commission of two and one-half per cent upon the principal of an
estate of $2,500,000 is a proper compensation to four individual exec-
utors, where the compensation of the fifth executor, a trust company,
was fixed by a contract made by the testator in his lifetime at one and
one-half per cent upon the principal.

Argued Jan. 31, 1911. Appeal, No. 354, Jan. T., 1910,
by Clinton R. Sinnott, from decree of O. C. Montgomery
Co., March T., 1910, No. 10, Nov. T., 1909, No. 20, sus-
taining exceptions to adjudication in Estate of Joseph F.
Sinnott, deceased. Before BROWN, MESTREZAT, ELKIN,
STEWART and MOSCHZISKER, JJ. Reversed.

Exceptions to adjudication.

The material portion of the adjudication of SOLLY, P. J.,
was as follows:

This leaves but one question open, that is, What is a fair
and reasonable compensation for the executors, other than
the Fidelity Trust Company? It was agreed that the testi-
mony of Walter George Smith, Esq., taken at the audit of

the first account, should be considered with the same force and effect as if it had been taken at this audit. Referring to the adjudication of the first account, I found the following facts:

The death of the testator caused a closing down of his vast business, because of the strict regulation of the United States government. The distillery was closed, as well as the rectifying departments at 242 South Front street, in the city of Philadelphia. In order that the business might be resumed, it was necessary for the executors to obtain license from the court of Philadelphia, and from the court of Westmoreland county. It also became necessary for the executors to furnish large bonds to the United States government. They were required to give bonds aggregating in amount about $2,509,000, and, as we understand, these bonds are required to be annually renewed. There were about 40,000 barrels of whisky in the bonded warehouses at Gibsonton, and 30,000 barrels more belonging to customers. The decedent had established agencies in the cities of New York and Boston. Expert accountants were retained to examine the books and accounts of the decedent's business, so that the executors might be properly informed of the situation. They retained Mr. John Sinnott as manager, as the testator expressly recommended, at a salary of $15,000 per year, and they placed a Mr. Daly in charge of the business at Gibsonton. The importance of the business, the great responsibility resting upon the executors, their positive duty to manage it for the best interests of the estate, called for the best business judgment, and the executors very properly resolved themselves into a board of directors, so to speak, held regular meetings, kept full minutes of every proceeding, and acted after full consultation and due deliberation. There were frequent consultations with the expert accountants, and the manager, and those in charge of the business at Gibsonton. The manager was required to furnish accounts of the business each month, and full detailed statements every three months. There were daily consultations with the

manager, and the executors' counsel. Many difficult questions arose day after day, requiring not only work and labor to solve, but also the application of the very best business judgment. Under the laws of the state of Massachusetts, in order that the agency business in the city of Boston might continue, ancillary letters on the estate were required. This involved additional labor and responsibility. Another matter of grave concern arose out of the failure of the Real Estate Trust Company, of Philadelphia, the surety upon the bonds given by the executors to the United States. Immediately after the public had been informed of the failure of the company, United States officials notified the executors to file new bonds. This required the executors to find additional surety, and to act without delay, because failure to comply with the demand of the government would have resulted in the closing down of the entire distilling business.

I further find the second and third accounts are confirmatory of the conservation of the estate by the executors; that the executors performed a vast amount of unusual and extraordinary labor imposed upon them by the testator; a very large amount of money passed through their hands, and as the result of their management of the business, a net profit of over $500,000 is shown.

Practically all of the estate has been converted. The exceptant makes no point that the estate in the hands of the executors is not to be transferred at this time to them as trustees. He frankly stated that for the purposes of the case, the taking over of the assets of the distillery business might be regarded as an actual conversion. We are not, therefore, confronted with the situation the estate was in when the appeal was heard in the Supreme Court. The estate has not only been conserved, but for present purposes has been converted.

On the subject of compensation, Mr. Justice STEWART when this case was before the Supreme Court, said, "The basis on which compensation must be determined in every case where it takes the form of a commission, is the amount

of the estate administered upon and accounted for. With this amount ascertained, such per centum rate may be allowed thereon as in the opinion of the auditing judge will afford just and reasonable compensation to the accountants." He further said, "Until such conversion shall have been accomplished, no compensation will have been earned as to these assets, and therefore none will be allowed."

The estate has been converted, and the executors are entitled to have their compensation fixed and paid. As to the compensation of the Fidelity Trust Company, that was fixed by the testator himself, under agreement of April 18, 1900. He agreed to appoint the company one of the executors and trustees, and provided that they should have a commission of one and one-half per centum of the principal of the estate if it inventoried over $1,000,000, and a commission of two per cent on the income, and that they should have for acting as trustees two per centum on the income, and an allowance of one-half of one per centum on reinvestments. The compensation of the company was graduated if the inventory was over $500,000 and less than $1,000,000, or if it was over $100,000 and less than $500,000. The agreement also provided that the company's compensation should be outside of the compensation of the other executors and trustees, which the decedent was to fix.

There is not and can be no question but that the compensation of the fidelity company has nothing to do at all with the compensation to which the other executors are entitled. "The rule is fair compensation for the amount and character of the labor. The responsibility involved in large estates is also an element to be compensated, though not a controlling one:" Wistar's Est., 192 Pa. 289. "The labor and responsibility involved in the proper administration of the estate, and the care and skill shown by the executors in the performance of the duties connected with the trust, must be taken into consideration in passing upon their claim:" Lilly's Estate, 181 Pa. 478.

There are decisions without number, and the books are full of cases on the subject of the commissions or compensation of executors, administrators and trustees. A very complete brief of the cases in Pennsylvania is that of counsel for appellee in Wistar's Est., 192 Pa. 289.

There is no set rule as to percentage. In arriving at the compensation to which an executor is entitled, it is necessary to consider the amount, the estate, the labor performed, and the responsibility imposed.

In the adjudication of the first account, we allowed a commission of five per cent, as claimed, which included the one and one-half per centum of the Fidelity Trust Company. If this estate was an ordinary one involving simple administration and conversion, a commission of three per cent upon the corpus administered and converted would be full and ample compensation. But the labor and responsibility of the executors has been extraordinary. The estate is a large one, requiring skill and great responsibility. It has been managed with signal ability, and everything has been wisely and judiciously done by the executors. The office of executor is not one of profit. They are entitled to be fairly compensated.

We have given the matter careful consideration, and have reached the conclusion that the four executors, under all the circumstances, will be reasonably compensated within the meaning of the law if they receive two and one-half per centum on the corpus of the estate. This, with the compensation of the Fidelity Trust Company, the other executor under the special contract, will make the per centum of the executors four per cent.

On exceptions to the adjudication SOLLY, P. J., filed an opinion in which he modified the adjudication so as to allow the individual executors three and one-half per cent commissions on the principal.

*Errors assigned* were in sustaining exceptions to the adjudication.

*N. H. Larzelere*, with him *M. Hampton Todd*, for appellant.—If this court adheres to its rulings in a long line of cases, the decree of the lower court must be reversed: Harrison's Est., 217 Pa. 207.

In Young's Est., 204 Pa. 32 (estate $263,036.77), three per cent was allowed.

In Whelen's App., 70 Pa. 410, three per cent was allowed upon $168,000.

In Oliver's Est., 20 W. N. C. 318 (O. Ct. of Phila.), on an estate of $711,330.39, the compensation was reduced from five per cent to three and one-half per cent.

The number of the executors is not to make any difference in the rate of commission (compensation): Wickersham's App., 64 Pa. 67; Walker's Est., 9 S. & R. 223.

*Wm. Rudolph Smith*, with him *Henry Pleasants*, for appellee, cited: Moore's Estate (No. 1), 211 Pa. 338.

PER CURIAM, April 10, 1911:

The testator appointed five executors of his will and had an agreement with one of them—the Fidelity Trust Company—as to the compensation it should receive for its services. On this appeal the question is as to the commissions to which the other four are entitled on the corpus of the estate, amounting to $2,503,099.95. They are to be allowed "just and reasonable compensation" for their services: Sinnott's Est., 224 Pa. 333. They asked credit in their account for commissions at the rate of three and one-half per cent on the principal of the estate, and, in sustaining an exception filed by the appellant to this item, the learned judge below, in his adjudication of the account, reduced the commissions to two and one-half per cent, saying: "We have given the matter careful consideration, and have reached the conclusion that the four executors, under all the circumstances, will be reasonably compensated within the meaning of the law if they receive two and one-half per centum on the corpus of the estate. This, with the compensation of the Fidelity Trust Company, the

other executor under the special contract, will make the per centum of the executors four per cent." Exception to this was filed by the appellees, and the court, in sustaining it, awarded them the three and one-half per cent commission which had been denied them on the adjudication of their account. We are satisfied that the conclusion reached by the auditing judge in his adjudication was the correct one, and no good or substantial reason is to be found in the opinion of the court sustaining appellees' exception for disturbing the original finding. The decree allowing the appellees three and one-half per cent on the principal of the estate is reversed, and it is now ordered and decreed that they be allowed two and one-half per cent thereon, found in the adjudication to be reasonable compensation to them, the costs on this appeal to be paid by the estate.