## Stoddart Estate

*Clarence H. Reed,* for accountants.

*Martin J. Cunningham, Jr.,* guardian and trustee ad litem.

KLEIN, P. J., May 18, 1962.—Katharine S. Stoddart died on November 18, 1953, leaving a will and codicils by which, inter alia, she devised and bequeathed her residuary estate to her executors and trustees, in trust to pay the income one-half to her sister, Norah S. Miller, for life, and upon her death, one-half to her husband, Dr. Edgar T. Miller, for life, and the other one-

half to her daughter, Katharine Elizabeth Miller, now Vila, for life, and upon the death of either, the entire income from said share to the survivor, and to pay the other one-half of the income in equal one-third shares to her nephews and niece, D. Herbert Schweyer, J. Le-Roy Schweyer and Katharine Scheyer Bertolette, for their respective lives, and upon the death of each of her said nephews and niece, to pay over the share of principal from which the one so dying had been receiving the income as he or she should by will appoint, with further provisions which it does not appear necessary to recite in this adjudication, as a photostatic copy of the will and codicils is annexed hereto.

The fund presently accounted for was awarded to the present accountants by adjudication of Judge Shoyer, dated June 2, 1955, and supplemental adjudication dated June 17, 1955, and the occasion of the filing of the present account was the death on December 20, 1960, of J. Leroy Schweyer, nephew of testatrix and cestui que trust as to one sixth of the residuary estate. The said J. Leroy Schweyer left a will, of which Dorothy Koster Schweyer and Eloise Schweyer Ryan are stated to be executrices, and by the terms of which he exercised his power of appointment under the will of the present testatrix by directing that the principal of said share be paid to his daughter, Eloise Schweyer Ryan. A copy of his will is also annexed hereto.

Norah S. Miller, cestui que trust as to one-half of the estate, appears to be still living, as are also D. Herbert Schweyer and Katharine Schweyer Bertolette, cestuis que trustent as to one-sixth of the estate, each.

The names and interests of all parties in interest appear to be fully and accurately set forth in the statement of proposed distribution and need not be recapitulated in this adjudication. By decree dated March 19, 1962, Martin J. Cunningham, Jr., Esq., was appointed

guardian ad litem for minors and trustee ad litem for all unborn and unascertained interests.

Credits are taken in the principal account and in the income account for equal payments to the accountants of approximately $2,318, representing fees paid to the trustees from approximately June 15, 1954, to September 12, 1961. These charges appear to have been calculated on the basis of a formula agreed to by the life tenants and the corporate trustee after the death of testatrix, fixing the corporate trustee's compensation at $5 per thousand per annum on the first $100,000 of principal, $4 per thousand per annum on the next $400,000, etc., payable one-half out of income and one-half out of principal.

There were no objections at the audit to the aforesaid charge by the accountants against the income account, but Mr. Cunningham, as guardian and trustee ad litem, objected to the credit of $2,318.44 which is charged against the principal account, on the ground that the accountants have shown no justification for the payment thereof as interim compensation, and also that the life tenants are without authority to bind the remaindermen by any agreement concerning commissions or compensation to the trustees.

Generally, a fiduciary, in this State, in the absence of an express contract, is not permitted to charge graduated commissions on principal diminishing in higher brackets: Williamson Estate, 368 Pa. 343 (1951); Gardner's Estate, 323 Pa. 229 (1936). Nor can it make an annual charge (usually, as in the present case, in the amount of one-half of one percent of the trust principal) payable in equal shares from principal and income, except by express contract. Our experience, over the years, would lead us to believe that such methods of compensating fiduciaries for their services, if permissible, would be fair and reasonable, and it is hoped that they will be adopted in this State,

either by act of the legislature or by appellate court action.

Contracts between testator or settlor and the trustee, however, fixing the amount and manner of payment of compensation for fiduciary services have been considered lawful and binding upon the estate, whether contained in the trust instrument, itself, or covered by collateral agreement.* See Sinnott's Estate, 231 Pa. 299 (1911); Yeager Estate, 69 D. & C. 228 (1949); League's Estate, 39 D. & C. 620 (1940); Adams Estate, 1 Fiduc. Rep. 561 (1951). And this principal has statutory sanction in section 4 of the Act of May 1, 1953, P. L. 190, which provides:

"Where the compensation of a fiduciary is expressly prescribed either by provisions of a will or deed of trust or other instrument under which he is acting or by provisions of an agreement between him and the creator of the trust, nothing in this act shall change in any way the rights of any party in interest or of the fiduciary."

Moreover, a beneficiary who has an absolute and complete interest in all or any part of a trust estate may make a binding agreement with the fiduciary with respect to compensation for services performed in administering that portion of the estate which the beneficiary controls.

A life tenant with a general power of appointment over principal by will has, for most practical purposes, an estate tantamount to a fee. See Lyon v. Alexander, 304 Pa. 288 (1931). Accordingly, it has been held that those who claim through him by virtue of such power of appointment, are estopped if they seek to surcharge the trustee for loss of trust funds resulting from invest-

---

* Considerable doubt exists as to whether a settlor, who has created an irrevocable trust, can, by agreement, change the arrangements for compensation subsequent to the execution of the trust instrument.

ments made by the trustee if the life tenant approved such investments. See Perkins' Trust Estate, 314 Pa. 49 (1934) ; Curran's Estate, 312 Pa. 416 (1933). In like manner, it would appear that a life tenant, who is sui juris, has a general power of appointment, and whose interest is not subject to spendthrift or other limitations, may also enter into a valid contract with the fiduciary, fixing the compensation to be charged for administration of his share of the estate which would be binding, not only upon him, but also upon his appointees.

In the opinion of the auditing judge, therefore, so much of the trustees' compensation charged to principal in the present account as represents compensation on the one-sixth share of the trust which now terminates, viz. one-sixth of $2,318.44, or $386.41, should be allowed against the said one-sixth distributive share, under J. Leroy Schweyer's agreement with the trustees. Allowance of the trustees' compensation on the remaining five-sixths of the principal should, however, be disallowed at this time, without prejudice to trustees' right to assert claims therefor as and when additional shares of the trust terminate.

Mr. Cunningham, as guardian and trustee ad litem, also objected to the inclusion in the principal account of the entire amount of counsel fee to counsel for the accountant, $750, and also the cost of filing the account, $130, contending that these charges should be imposed upon the outgoing share distributable under J. Leroy Schweyer's exercise of his power of appointment, or upon income, or upon both, but, in any event, should not be borne by the share continuing in trust.

As to apportionment of costs of filing an account, section 11(2) of the Principal and Income Act of July 3, 1947, P. L. 1283, provides:

"Trustees' compensation, compensation of assistants and court costs and attorneys' and other fees may be

apportioned between income and principal as the court may direct."

In the opinon of the auditing judge, the benefits of the present accounting, which covers a period of over seven years, may be said to have enured to both life tenants and remaindermen and the costs thereof will accordingly be charged in equal shares to principal and income. The one-half chargeable to principal, however, will be charged against the outgoing share only, in accordance with the usual practice in partially terminating trusts: Miller's Estate, 12 Dist. R. 719 (1903). See also Schramm Estate, 1 Fiduc. Rep. 387 (1951).

Mr. Cunningham requested allowance of compensation to himself, as guardian and trustee ad litem, in the sum of $400, which amount conforms to the schedule of compensation effective in this court January 17, 1955, and it will be so awarded, to be charged against the entire principal. . . .

And now, May 18, 1962, the account is confirmed nisi.