473 A.2d 1078

**ESTATE OF Ethel SCHWENK, Deceased.**

**Appeal of Frank L. FISHER and Elizabeth S. Wiest, Exceptants.**

Superior Court of Pennsylvania.

Argued Nov. 15, 1983.

Filed March 16, 1984.

Petition for Allowance of Appeal Granted July 16, 1984.

A.2d 393, 395 (1975); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

254

Fred J. Wiest, Jr., Pottsville, for appellants.

Morris R. Brooke, Philadelphia, for appellee.

Before SPAETH, President Judge and BROSKY and HOFFMAN, JJ.

HOFFMAN, Judge:

The sole issue on appeal is whether the trustee's fees at issue are to be paid out of the principal or the income of a trust created under the testatrix's will. Because we find that the trustee's fees were properly charged against the principal, we affirm the order of the court below.

On June 6, 1949, the testatrix, Ethel K. Schwenk, died leaving a will dated August 28, 1947. Testatrix bequeathed her residuary estate to the Girard Trust Company (now, Girard Bank), in trust, to pay the net income to her sister, Gertrude T. Kauffman, for life, and, upon her sister's death, to distribute the principal, in equal shares, to the surviving children of the sisters of testatrix's deceased husband. Prior to the execution of the will, Girard had sent a letter dated August 8, 1947, to the testatrix, which provided in relevant part as follows:

Dear Mrs. Schwenk:

Since you have decided to confide to our Company the future administration of your estate affairs, we take this occasion to express our sincere appreciation and to assure you that we will do everything in our power to carry out your wishes faithfully and efficiently.

As our services will extend over a period of years in the future commencing at some now indeterminate date and will of necessity be subject to circumstances and conditions not now foreseeable, we believe that the following arrangement as to compensation is sufficiently flexible to meet changing conditions and will avoid injustice either to your beneficiaries or to ourselves.

To record the understanding between us as to the compensation to be paid us for such services as we may be called upon to render either as Executor of your last Will or as Trustee of any trusts arising thereunder or under any Deed of Trust executed by you, we propose that our compensation shall be in accordance with the

"Standard Fee Schedule for Personal Trust Services" adopted by our Board of Managers and in effect at the time when we commence to perform the services referred to above, ...

. . . .

*All Trustee's fees payable from time to time shall be charged against the principal of the Trust* unless you specifically direct otherwise under the heading of "Special Provisions" on the following page, ...

We will appreciate your signing and returning this letter as evidence of your acceptance of this proposal. When thus signed this letter will constitute an agreement between us and authority for your Executors, Trustees and beneficiaries to comply with the terms thereof. A copy is attached for your files.

With many more thanks for your appointment of our Company

ACCEPTED:

Cordially yours,

/s/ A.D. Davis,

Vice President

/s/ Ethel K. Schwenk

Ethel K. Schwenk

(Emphasis added). There were no specific directions to the contrary noted and the acceptance signed by the testatrix was not dated. Pursuant to this fee agreement, and subsequent to its appointment, Girard administered the trust for almost thirty years, charging its fees against the principal. On December 18, 1979, Gertrude T. Kauffman died, survived by one niece, Elizabeth S. Wiest, and one nephew, Frank L. Fisher (appellants). On August 28, 1980, Girard filed a final trustee's account and, on November 30, 1980, appellants filed objections to three disbursements from the principal, but then withdrew two objections by stipulation. The remaining objection was to a disbursement of $45,-692.86 for trustee's fees. Following hearings held on December 3, 1980, and January 9, 1981, the auditing judge, on July 12, 1982, confirmed the account nisi and dismissed the

objection. Appellants then filed exceptions to the decree nisi and, on February 22, 1983, the lower court *en banc* dismissed the exceptions and confirmed the adjudication absolutely, prompting this appeal.

Appellants contend that the testatrix's will unambiguously directs payment of the trustee's fees out of the *income* of the trust and, hence, overrides the letter agreement which directed payment out of the *principal.* They base their argument on the language of ITEM X of the will, which states:

> All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever nature or kind the same may be, or wheresoever the same may be situate, I give, devise and bequeath to Girard Trust Company, in trust, to hold, invest and reinvest the principal thereof and to collect the interest, income, dividends and rentals therefrom and *after the payment of taxes, trustee's compensation and other proper charges against income,* to pay the whole of the net income to my sister Gertrude G. Kauffman, for and during the term of her natural life.

(Emphasis added). The lower court, however, held that a "parenthetical reference" in a testamentary trust to payment of trustee's compensation out of income does not affect a "contemporaneous" fee agreement which provided that all trustee's fees shall be charged against the principal.

■ Section 7185 of the Probate, Estates and Fiduciaries Code upholds the validity of trustee's fee agreements, providing that:

> . . .—Where the compensation of a fiduciary is expressly prescribed either by provisions of a will or deed of trust or other instrument under which he is acting *or by provisions of an agreement between him and the creator of a trust,* nothing in this section shall change in any way the rights of any party in interest or of the fiduciary.

20 Pa.C.S.A. § 7185(c) (emphasis added). Additionally, our courts have held that an agreement between a settlor and a trustee fixing the terms of the trustee's compensation is a

valid and enforceable contract, whether contained in the trust instrument itself or covered in a separate writing. *In re Duncan Trust*, 480 Pa. 608, 614, 391 A.2d 1051, 1055 (1978); *In re Estate of Breyer*, 475 Pa. 108, 115, 379 A.2d 1305, 1309 (1977); *Carnahan Trust*, 27 D. & C.2d (Allegheny Co.1962). Here, we find that the fee agreement contained in the letter signed by both parties is valid and enforceable. There was a clear offer and acceptance, and consideration on both sides; *i.e.*, services to be rendered in return for compensation. *See League's Estate*, 39 D. & C. 620,. 624 (Montgomery Co.1940).

■ The question then remains: what is the effect of the testatrix's will on the fee agreement? The rule of will construction is well-established:

> "It is, of course, a cardinal rule that a will is to be construed according to the intent of the testator." ... Where a court feels that it can with reasonable certainty ascertain the intent of the testator through examination of the will itself, the court generally does not look to matters external to that document.... Where, however, a court cannot feel such confidence in distributing the estate by reference to the will only, or where a latent ambiguity is discovered, it is proper and necessary to inquire into the circumstances of the testator at the time of execution of his will and other evidence which bears on intent.

*Estate of Taylor*, 480 Pa. 488, 494, 391 A.2d 991, 994 (1978) (citations omitted). *Accord, Soles Estate*, 451 Pa. 568, 571–72, 304 A.2d 97, 99 (1973). In ascertaining testamentary intent, the court examines the language of the will, the scheme of distribution, the circumstances surrounding the execution of the will and other relevant facts. *Estate of Sykes*, 477 Pa. 254, 257, 383 A.2d 920, 921 (1978); *Chambers Estate*, 438 Pa. 22, 25, 263 A.2d 746, 748 (1970).

In the instant case, we conclude from an examination of the above-mentioned factors that the testatrix's intent was to maximize benefits accruing to her sister, the life tenant of the residuary estate. In ITEM IX of the will, testatrix

bequeathed all her "jewelry, furniture household furnishing, clothing and personal effects" to her sister. In ITEM XI, testatrix directed that all transfer, inheritance, succession and estate taxes be paid out of the principal so that her sister's life estate would be left unencumbered. And in ITEM XII, testatrix included a spendthrift provision, thereby protecting her sister's life estate from creditors. Therefore, as the lower court correctly stated, "What would be more rational than for testatrix to agree that her sister's income should be increased by authorizing that [the trustee's] commissions should be withdrawn from principal?" (Lower Court Opinion at 6). Within three weeks of executing the will, testatrix had signed the agreement directing that all trustee's fees were to be paid out of the principal. Additionally, the Girard accountant testified at the audit hearings that fee agreements, such as the one executed by testatrix, were typically tendered to the customer in connection with estate planning or the preparation of a trust or will. We note that the letter is dated August 8, 1947, and the will is dated twenty days later. The testatrix's acceptance on the letter, however, is undated and the record does not indicate whether the testatrix signed the agreement before, during or after the execution of the will.

■ Accordingly, we hold that the contract and the will should be considered contemporaneous writings. We further hold that, consistent with testamentary intent, Girard properly charged its trustee's fees against the principal pursuant to the express contract. There are few cases' involving the effect of a separate agreement on a will, but they support our determination. In *Ford's Estate: Richard's Appeal,* 185 Pa. 420, 39 A. 1106 (1898), our Supreme Court upheld the validity of an agreement executed by the testator's children eight months after the testator's death, which complied with oral statements of intent made by the testator shortly before his death that the children should have only the income of their shares for life. The Court held that the limitations under the agreement were to be regarded as if expressed in the written will. In *Sinnott's*

*Estate,* 224 Pa. 333, 73 A. 348 (1909), the Court assumed without discussion that a fee agreement between the testator and the trust company, designating the company as an executor and trustee under the will and setting the trustee's compensation, was valid even though the agreement was made five years prior to the execution of the testator's last will. In *League's Estate, supra* there was also a five year gap between the contract and the probated will, and the court, construing them together, gave effect to the fee agreement. In *Yeager Estate,* 69 D. & C. 228 (Philadelphia Co.1949), the decedent's first will appointed two executor-trustees, but his last will, executed two years later, added a third executor-trustee. The court, in construing the probated will, enforced an agreement contained in a letter sent by the testatrix to the third trustee eight days prior to the execution of the last will which provided that the trustee was to receive the same commission as the other two trustees; the court stated that a "contract to pay commissions in the amounts fixed by decedent is lawful and binding as far as the beneficiaries under testatrix's will are concerned[.]" *Id.* at 231. And in *Stoddart Estate,* 27 D. & C.2d 251 (Philadelphia Co.1962), after the death of the testatrix, the life tenants of the trust created under the will and the trustee agreed to a formula for calculating the trustee's fees. In rejecting the remaindermen's argument that they were not bound by the agreement, the court stated: "Contracts between testator or settlor and the trustee, ..., fixing the amount and manner of payment of compensation for fiduciary services have been considered lawful and binding upon the estate, whether contained in the trust instrument, itself, or covered by collateral agreement." *Id.* at 254.

The instant case presents a new problem in the construction of testamentary trusts and collateral fee agreements because it involves seemingly contradictory directives in the two documents. We find, however, that this contradiction is without substance. First, the contract's mandate that trustee's fees are to be charged against the principal is both

clearly expressed and consistent with testamentary intent while the will's directive is merely a parenthetical reference to "trustee's compensation and other proper charges against income". Next, appellants do not dispute the *amount* of trustee's compensation, which Girard had computed over the thirty-odd years according to the standard fee schedules referred to in the letter agreement, and, hence, cannot assert the total invalidity and inapplicability of the contract. Lastly, we agree with the auditing judge that the language of the will is "somewhat ambiguous" when considered with the rest of the will and the fee agreement. *See In re Herr's Estate*, 400 Pa. 90, 92, 161 A.2d 32, 34 (1960) (ambiguity can be created by extrinsic or collateral circumstances); *Beisgen Estate*, 387 Pa. 425, 431, 128 A.2d 52, 55 (1956) (latent ambiguity can be created by extrinsic or collateral circumstances). Moreover, we find that Girard's interpretation of the language of ITEM X as an *authorization* to make the listed charges against the trust income rather than as a *directive* to make such charges is plausible.[1] ITEM X directs the trustee "to collect the interest, income, dividends and *rentals* " (emphasis added) from the residuary estate. However, there is no real estate in the trust and, therefore, Girard would not be able to collect rentals. It is possible that the word "rentals" was inserted in the clause in the event realty was added to the estate prior to the testatrix's death. Similarly, the directive to pay the net income to testatrix's sister "after the payment of taxes,[2] trustee's compensation and other proper charges against income" could be interpreted as merely a provision against the possibility of a change in the fee agreement prior to the testatrix's death.

In light of our holding that the fee agreement and will are contemporaneous documents which evidence a testamentary intent to charge the trustee's fees against the

1.  Another plausible explanation for the language in ITEM X is that the drafter of the will used formula phrases for the clause.

2.  As we have already noted, testatrix, by ITEM XI of the will, directed that all transfer, inheritance, succession and estate taxes be paid out of the *principal.*

trust principal, we must reject appellant's contention [3] and affirm the order of the court below.

Affirmed.

**3.** By finding the fee agreement and the will to be contemporaneous consistent documents, we also dispose of appellants' arguments that: (1) testatrix breached the agreement by failing to deliver to the trustee a will which would provide for payment of trustee's compensation out of the principal; and, alternatively, (2) trustee was bound by a modified contract when it accepted the will by undertaking its duties thereunder.