490 A.2d 428

**ESTATE OF Ethel K. SCHWENK, Deceased.**

**Appeal of Frank L. FISHER and Elizabeth S. Wiest.**

Supreme Court of Pennsylvania.

Argued Dec. 3, 1984.

Decided April 4, 1985.

Reargument Denied June 4, 1985.

---

410

Fred J. Wiest, Chester C. Corse, Jr., Pottsville, for appellant.

Morris R. Brooke, Karen A. Fahrner, Philadelphia, for Girard Bank.

Stephen M. Cushmore, Norristown, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court which affirmed an order of the Orphans' Court Division of the Court of Common Pleas of Philadelphia County confirming a trustee's final account and dismissing remaindermen's objections to a credit claimed by the trustee. *Schwenk Estate*, 326 Pa.Super. 253, 473 A.2d 1078 (1984). The trustee, Girard Bank (formerly Girard Trust Company, now Mellon Bank (East), N.A.), had claimed the credit, in the amount of $45,692.86, against trust principal to reflect the total of compensation which it had paid to itself quarterly

as compensation for its services as trustee during the twenty-nine years of the trust's existence. The sole issue on appeal is whether the trustee's compensation was properly to be treated as a charge against principal, or whether the trustee should have taken its compensation from the income of the trust.

The trust in question was created when a testatrix, Ethel K. Schwenk, died on June 6, 1949, leaving a will dated August 28, 1947. The will appointed Girard Bank as executor and created a testamentary trust, of which Girard Bank was to serve as trustee. Girard Bank received full compensation for its role as executor, as distinguished from trustee, when, in 1951, the executor's account was approved and duties as a trustee commenced.[1] Under the terms of the trust, testatrix's sister, Gertrude T. Kauffman, was given a life estate in the income of the trust, and, upon Kauffman's death, Girard Bank was to distribute the principal, in equal shares, to remaindermen consisting of the surviving children of the sisters of testatrix's deceased husband. Following the death of Gertrude T. Kauffman on December 18, 1979, the appellants, as the remaindermen of the trust, objected to the trustee's final account on grounds that compensation for services as a trustee should have been taken from income of the trust, rather than from trust principal.

The relevant provision of testatrix's will, addressing compensation for the trustee, provided that Girard Bank should hold the residuary estate in trust, "to hold, invest and reinvest the principal thereof and to collect the interest, income, dividends and rentals therefrom and *after the pay-*

---

1. We find no merit in Girard Bank's assertion that the remaindermen culpably acquiesced in the trustee's actions and that they should, therefore, be estopped from objecting to the credit claimed by the trustee at the final accounting. Girard Bank never filed an interim account for the trust, and the account which it filed as executor of testatrix's estate, showing that, pursuant to an agreement, it took compensation from estate principal for its role as executor, cannot be regarded as having given notice to the remaindermen that compensation as trustee would be paid in some manner other than as the trust document provided.

*ment of taxes, trustee's compensation and other proper
charges against income,* to pay the whole of the *net* income
to my sister Gertrude T. Kauffman, for and during the term
of her natural life." (Emphasis added.) We believe this
language is clear and unambiguous, and that the terms of
the testamentary trust could not have been more explicit in
their directive to pay trustee's fees out of the income of the
trust. In view of this express language in the will, the
contention of Girard Bank that the will permits payment of
such fees out of the principal of the trust is patently
without merit.

The courts below, in holding that the trustee's compensa-
tion was a valid charge against principal, erroneously con-
sidered evidence aliunde to reach a conclusion that is plainly
contrary to the intent expressed in the will. This evidence
consisted of a letter, dated August 8, 1947, sent by Girard
Bank to testatrix approximately three weeks before the will
in question was executed. The letter recorded an under-
standing between the parties that Girard Bank would han-
dle the administration of testatrix's estate, stated that the
amount of the trustee's compensation would be that set
forth in Girard Bank's Standard Fee Schedule, and provided
as follows with regard to the manner in which the trustee's
compensation would be collected:

> All trustee's fees payable from time to time shall be
> charged against the principal of the trust unless you
> specifically direct otherwise under the heading "Special
> Provisions" on the following page ... We will appreciate
> your signing and returning this letter as evidence of your
> acceptance of this proposal.

In accordance with the request contained in the letter,
testatrix affixed her signature and returned the letter to
Girard Bank. Testatrix made no entries under the heading
"Special Provisions," and, thus, did not then express an
intent to draft a will that provided for payment of trustee's
compensation in some manner other than from the principal
of the trust. This fact was the basis of Girard Bank's
contention that the will in question, which was executed

approximately three weeks after Girard Bank sent the foregoing letter to the testatrix, should be interpreted as allowing compensation to be paid from trust principal.

■■■■ It is well settled that, where a court can with reasonable certainty ascertain the intent of a testator through examination of the will itself, resort to consideration of matters external to that document is not generally proper. *Taylor Estate*, 480 Pa. 488, 494, 391 A.2d 991, 994 (1978). When a will as written is clear and unambiguous, it is error for the court to consider external evidence tending to impute an intent to the testator different from that appearing on the face of the will. *Kelly Estate*, 473 Pa. 48, 52–55, 373 A.2d 744, 746–748 (1977). As stated in *Jacobsen Estate*, 460 Pa. 118, 122–123, 331 A.2d 447, 449 (1975),

> The common law has consistently proclaimed that the testator's intent is the crux in interpreting every will and that *intent must be ascertained from the language chosen by the testator.... Courts will not search for the testator's intent beyond "the four corners of his will"* when the language of that document is sufficiently clear and unambiguous so as to lead the court to believe it can with reasonable certainty effect a distribution in accordance with the testator's desires.

(citations omitted; emphasis added). See also *Soles Estate*, 451 Pa. 568, 571, 304 A.2d 97,99 (1973). In the instant case, the courts below committed error by looking beyond the "four corners" of testatrix's will to consider the letter that had been exchanged between the parties prior to the will's execution. That letter stood in plain contradiction to the testamentary trust's clear and unambiguous provision contemplating payment of trustee's fees from trust income.

One may only speculate as to the reasons that testatrix's will did not, in its provisions regarding the source of the trustee's compensation, conform to the terms expressed in the letter which she earlier signed and returned to Girard Bank. Whether testatrix neglected to remember the letter, failed to understand the meaning of the letter, knowingly changed her mind about the manner in which the trustee's

fee was to be paid, or breached an agreement with Girard Bank as to the provisions that would be contained in her will are all factors that are not relevant to the process of interpretation when the will itself is devoid of ambiguity.

■ When Girard Bank, as the designated executor and trustee for testatrix's estate, presented the instant will for probate, it undertook thereby to faithfully administer the provisions of the will, and, therefore, Girard Bank must be charged with knowledge of the clear and unambiguous terms in that document. We need not address the question of what timely recourse, if any, would have been available to Girard Bank, upon testatrix's death in 1949, when Girard Bank was charged with having discovered that the terms of the will did not conform to its expectations.

■ Fee agreements, governing the amount and manner of a testamentary trustee's compensation, have long been recognized as a valid means of governing terms of a testamentary trustee's compensation that have not been set forth in the will itself. See, e.g., *Sinnott's Estate*, 231 Pa. 299, 302, 80 A. 363, 364 (1911). See also, Decedents, Estates and Fiduciaries Code, 20 Pa.C.S.A. § 7185(c) (1975). Thus, in the present case, where the amount of the trustee's compensation was not set forth in the will which created the trust, and only the source of the trustee's payment was so specified, there is no dispute as to the fact that Girard Bank's Standard Fee Schedule controls the amount of the fees that the trustee could properly have claimed, since that Schedule was specified in the letter which testatrix signed and returned to Girard Bank. As to the source of the trustee's compensation, however, the will was not silent, and its terms must be regarded as controlling because they clearly express the testatrix's intent as to the funds from which the trustee should be paid. Indeed, it would be an anomaly to allow a fee agreement, a document not designed to express testamentary intent, to nullify the operative provisions of a subsequent will, where the subsequent will would have supplanted the earlier document even if the earlier document had been a will in itself.

■ Girard Bank contends that if, as we have here decided, the will is held to override the provision of the fee agreement governing the source of the trustee's compensation, then the trustee should be awarded a trust termination commission. This commission, which Girard Bank asserts to be due only if the sums heretofore discussed which it already paid to itself are disallowed as a credit against principal, would also be assessed against principal, and would be claimed in the same amount as the disallowed payments, to wit $45,692.86. We believe, however, that payment of any separately identified termination commission was foreclosed by the portion of the fee agreement that was not overridden by the will.

■ Trustees are normally entitled to receive commissions based upon the principals, as well as the incomes, of the trusts they administer. *Breyer Estate,* 475 Pa. 108, 379 A.2d 1305 (1977); *Reed Account,* 467 Pa. 371, 357 A.2d 138 (1976). Where the governing trust documents or fee agreements are silent as to providing for such commissions, the courts are empowered, pursuant 20 Pa.C.S.A. § 7185, to award such compensation. *Id.* Where, however, the operative provisions of a trust document, or fee agreement, fix the amounts and timing of the income and principal commissions, those provisions are to be given effect. *Cahen Estate,* 483 Pa. 157, 394 A.2d 958 (1978), appeal dismissed, 491 Pa. 422, 421 A.2d 209 (1980); *Breyer Estate,* supra.; *Reed Account,* supra.; 20 Pa.C.S.A. § 7185(c) ("Where the compensation of a fiduciary is expressly prescribed either by provisions of a will or deed of trust or other instrument under which he is acting or by provisions of an agreement between him and the creator of the trust, nothing in this section shall change in any way the rights of any party in interest or of the fiduciary.")

At no time in the course of this controversy have the parties disputed that the amounts of the trustee's fees, as opposed to the source of their payment, are governed by the Standard Fee Schedule which was adopted by reference in the fee agreement letter. Girard Bank presented testimony

that the Standard Fee Schedules in effect since the inception of this trust have not provided for the assessment of separately identified income and principal commissions. Specifically, the Schedules have not charged a commission on the income of a trust and then assessed a separate fee against principal as a termination commission upon the closing of a trust account. Rather, the Schedules have in effect combined the two types of commissions by providing for periodic payments of trustee's compensation throughout the life of the trust, the magnitude of such payments being determined as a percentage of trust principal. A witness for Girard Bank testified that this compensation arrangement was adopted for the Bank's benefit, so that the Bank would not have to await the termination of trust accounts to receive significant portions of its compensation.

■ Testatrix's will provided that the "trustee's compensation", thus the amounts specified in the Standard Fee Agreements, should be paid from the income of the trust. Since the periodic fees payable included what were in effect installments upon the termination commission that would otherwise have been collectible in one lump sum at the end of the trust's existence, Girard Bank has, by its failure to collect those fees while there was income from which they could be paid, disabled itself from collecting them.

In short, this is a case where a professional trustee failed to take adequate notice of provisions governing its own compensation. Whether the trustee can obtain reimbursement from the estate of the life income beneficiary, Gertrude T. Kauffman, for sums paid to her which properly should have been reserved by the trustee as its own compensation is not at issue in the present case. In any event, the remaindermen of the trust shall not be required to bear the loss accruing from the trustee's error. The credit against principal claimed by the trustee is, therefore, disallowed.

Order of the Superior Court reversed.

HUTCHINSON, J., did not participate in the decision of this case.

NIX, C.J., files a dissenting opinion.

ZAPPALA, J., joins in the Majority and files a concurring and dissenting Opinion.

NIX, Chief Justice, dissenting.

I dissent.

As the majority concedes, "[f]ee agreements, governing the amount and manner of a testamentary trustee's compensation, have long been recognized as a valid means of governing terms of a testamentary trustee's compensation...." Maj. op. at 416. The contract entered into by the testatrix and trustee Girard Bank in the instant matter is precisely such an agreement, governing both the amount and the manner of compensation. That agreement explicitly provided that all trustee's fees would be charged against the principal of the trust unless the testatrix otherwise directed at the time the agreement was made. The testatrix signed the contract and did not elect to designate a source of trustee's compensation other than principal. The estate should thus be bound by the explicit terms of the agreement. *See Estate of Cahen,* 483 Pa. 157, 394 A.2d 958 (1978); *In re Duncan Trust,* 480 Pa. 608, 391 A.2d 1051 (1978); *In re Estate of Breyer,* 475 Pa. 108, 379 A.2d 1305 (1977).

The majority reasons that it would be an "anomaly" to allow the agreement to nullify a provision in the testatrix's will because that agreement was "not designed to express testamentary intent." Maj. op. at 416. That conclusion is a *non sequitur.* The manner of payment of the trustees fees is not a question of testamentary intent but rather the interpretation of a material contractual term agreed to by the testatrix. Pursuant to the agreement, the trustee provides its services in return for compensation taken from the trust corpus. Although the will may authorize the trustee to deduct its fees and other proper expenses from the trust income, the alternative manner of payment established un-

der the contract is legally binding. The will should not be construed as abrogating a valid agreement between the testatrix and her trustee.

ZAPPALA, Justice, concurring and dissenting.

The majority holds that Girard Bank has disabled itself from receiving a termination commission by its failure to collect such fees from trust income. This holding is inappropriate in view of the fact that the issue is not before us. Furthermore, such a holding is inconsistent with and contrary to our prior case law. I dissent from the majority opinion insofar as it precludes Girard Bank from receiving a termination fee in this matter.

The sole issue on appeal is characterized by the majority as whether the trustee's compensation was properly handled as a charge against principal. Because the only fees which were subject to dispute in the lower courts were those for income commissions, the issue is in fact narrower than that statement suggests. The propriety of a charge against principal for those services performed by the trustee in handling the trust corpus was neither the subject of this appeal nor objected to in the proceedings before Orphans' Court Division in the Philadelphia County Court of Common Pleas. Indeed, the Appellants own statement of the question involved frames the issue as "where ... [the] testatrix ... executed a will which directed, 'trustee ... to collect ... income ... and after the payment of taxes, trustee's compensation and other proper charges against income to pay the whole of the net income to my sister ... for her natural life,' is trustee justified in charging its *entire* compensation against principal?" [Appellants' Brief at p. 3] [Emphasis added]

While the majority curiously fails to do so, the Appellants themselves have always recognized that Girard Bank is entitled to compensation for its efforts in managing the corpus of the testamentary trust. Nowhere is this more evident than in the proceedings before Administrative

Judge Pawelec on objections filed to the final account of the trustee. The following exchange ensued:

THE COURT: Now, basically—and I don't know whether it is covered in the stipulation or not—what you are in essence saying is that—*are you denying the fact that the trustee is entitled to a terminal fee?*

MR. WIEST:[1] *No. No, we are not denying that.*

MR. CUSHMORE: Your Honor, if I may interrupt? This is not actually a terminal commission. This is the sum total of the compensation charged year by year in the trust.

THE COURT: I realize that. I realize that that is the way it is listed in the account and that is what is included. I just wonder—and as I understand it the trust is in fact terminating and there is going to be a distribution to the two heirs.

MR. WIEST: That is correct.

THE COURT: My question is: From the objection as I read it there was a question in regard to the interpretation of possibly the instrument. *And I was wondering whether counsel for the objectants actually were saying that the trustee was not entitled to any compensation from principal, even a terminal commission? Whether that was their objection? And they say "No".*

MR. WIEST: Your Honor, that was a possible interpretation under the will. *But we are satisfied that the trustee shall have a terminal lump sum payment out of principal.*

THE COURT: All right. I think I understand that.

MR. WIEST: But the whole of the administrative expenses should not be charged against principal. That is our objection.

THE COURT: You don't mean "adminstrative expenses"?

1. Mr. Wiest was and is counsel for the Appellants.

MR. WIEST: Well, the trustee's expenses—all of the trustee's compensation should not be charged against principal.

MR. CUSHMORE: Your Honor, I think that it becomes clear from the stipulation that the dollar amount of the compensation is not in dispute. It is simply the fact that all of the trustee's compensation was allocated and paid from principal and I think the objectors' position is that some part of that—or all of it, should have been charged against the income throughout the life of the trust.

\*    \*    \*    \*    \*    \*

THE COURT: Counsel for the objectants agrees that that number is correct, except—and let's see if I have the exception right—except he says that a certain amount of that only should be charged principal [sic], as a terminal commission, and the balance should have been charged against income during the course of the trust.

MR. WIEST: That is our position exactly, your Honor.

THE COURT: All right. Now, do you have those numbers in here—as to what you agree? Or did you not agree on numbers?

MR. CUSHMORE: The only agreement is that the sum charged and listed in the account was correctly computed through the years according to the standard schedules in effect.

Now, the question is simply the allocation of that between the principal and income. And we don't agree on that.

MR. BROOKE: The answer to your Honor's question is, no, that has not been stipulated to.

THE COURT: That has not been agreed to?

MR. BROOKE: That is correct.

MR. WIEST: That is correct.

THE COURT: Now, let me ask you the other question. How am I supposed [sic] to conclude that without any testimony? Let's suppose I don't agree with the position of the bank and I agree with the position of the objectants. What evidence do I have to make the allocation?

MR. CUSHMORE: I don't feel you have any evidence for that.

MR. WIEST: We believe that you can, your Honor. You can say that a terminal commission should be at a certain percentage of the gross estate at the time of termination.

THE COURT: Shouldn't somebody put something on the record as to that particular number? Or do I just make it up?

MR. WIEST: That number is in the account, your Honor. The gross value of the estate at termination is on record in the account.

THE COURT: All right. But what is the percentage that I take of that number?

MR. WIEST: I think that is what the Court must decide.

\* \* \* \* \* \*

THE COURT: ... But now what would it be if I say there is no agreement. If I conclude there was no binding lifetime agreement between the decedent and the bank, then I would have to make an allocation between what should be the terminal commission and the balance.

MR. WIEST: Suppose we could agree, your Honor, that the services rendered as far as the principal was concerned, were the ordinary services in which principal of an estate of this size and for this duration and this complicity was fixed?

THE COURT: The only problem with that is that is that we don't know the complexity of this. We know the duration but not the complexity or anything else about it. And I know banks in many instances determine terminal commissions and have a fixed formula. Now, would that be acceptable to the objectants? I don't know the answer to that.

I am not asking you to answer that. I am just presenting the problem. I am not expecting you to answer that question now. I know you probably hadn't thought about that.

MR. WIEST: No, I have, your Honor. And I have a case in which the bank—this very bank asked for and received

three and a half per cent in terminal commissions. And I mentioned that case in my brief. And for that reason you may be able to decide it if we get over the first hurdle. *We may be able to determine what the commission should be—the terminal commission should be—under the case law.*

[R. 16a–25a] [Emphasis added]

The majority interjects a dispute into this appeal which simply did not exist. The actual *amount* of the termination fee to be paid to Girard was not agreed upon by the parties; however, Girard's *entitlement* to such a fee was never contested. The lower courts' conclusion that the fee agreement was controlling made it unnecessary to determine the percentage or fee appropriate upon termination of the trust. The majority's contrary conclusion that the provision of the will was controlling necessitates a remand of the issue of the appropriate termination fee.

The majority interprets the will to require that all compensation, including the termination fee, be paid from the income of the trust. Item X of the will provides:

All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever nature or kind the same may be, or wheresoever the same may be situate, I give, devise and bequeath to Girard Trust Company, in trust, to hold, invest and reinvest the principal thereof and to collect the interest, income, dividends and rentals therefrom and after the payment of taxes, trustee's compensation and other proper charges against income, to pay the whole of the net income to my sister Gertrude T. Kauffman, for and during the term of her natural life.

Upon the death of the said Gertrude T. Kauffman should she survive me, or upon my death, she having predeceased me, I give, devise and bequeath my residuary estate to those children born of the sisters of my deceased husband, Charles A. Schwenk, being his nephews and nieces, in equal shares, who are living at the

death of my said sister Gertrude T. Kauffman, should she outlive me or at my death should she predecease me.

Notably absent from the provision is any language relative to the compensation to be paid to the trustee for management of the trust principal. It is clear, however, that "... labor, care and responsibility pertaining to the conservation of the capital itself are properly a charge on it, and are to be deducted from it when the trust expires, or the particular trustee's relation to it ends." *Bosler Estate,* 161 Pa. 457, 462, 29 A. 57, 60 (1894). The language of the will providing for compensation from the income of the trust may not properly be interpreted to fill that void.

*In re Reed,* 467 Pa. 371, 357 A.2d 138 (1976), presented our Court with this issue of whether a trustee is entitled to receive payment from the principal of a trust for the administration and conservation of the trust, in addition to compensation received from the trust income under provisions of a will appointing a trustee. We held that a trustee was entitled to compensation from the principal although compensation from trust income was expressly prescribed in the will. This Court rejected arguments that a provision of the will setting the compensation for the trustee at the sum of $4,000 per year was intended to be the sole compensation and that the trustee would be barred under 20 Pa.C.S. § 7185(c) from requesting additional compensation. We reiterated our holding in an earlier case, *Kennedy Trust,* 364 Pa. 310, 314, 72 A.2d 124, 126 (1950), in which we stated:

> Here, the trust deed is silent as to the compensation payable to the trustees upon the termination of their fiduciary duties and their faithful handling of and accounting for the trust corpus. *Their prima facie right to remuneration for such services is not to be overriden by a mere implication drawn from incidental mention in the deed of trust of a ... commission to the trustees on income.... There is no suggestion that the deductible commission on income was to be in complete discharge of the trustees' services with respect to corpus.*

Accordingly, while I join the majority opinion in its resolution of the issue of income commissions, I dissent from its holding that Girard Bank is foreclosed from receiving a termination fee. I would remand the issue of the termination fee to the Orphans' Court Division of the Philadelphia County Court of Common Pleas for resolution.