**Sean HENNESSEY and Kathleen Ernst, Appellee,**

v.

**Elizabeth HENNESSEY, Appellant.**

Superior Court of Pennsylvania.

Argued June 15, 2005.
Filed Sept. 9, 2005.

Brian Yeager, Scranton, for appellant.

Janet E. Amacher, North Wales, for appellee.

Before: MUSMANNO, MONTEMURO, KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, Elizabeth Hennessey, appeals from the order entered in the Montgomery County Court of Common Pleas, which: (1) awarded survivor benefits from annuities created in accordance with the will of James Edward Hennessey, Jr. ("J. Edward") to the estate of his son, James E. Hennessey, III ("James"); and (2) nullified the James E. Hennessey, III Trust ("James III Trust"). Appellant asks us to evaluate whether there was a latent ambiguity in the will that would allow parol evidence to demonstrate J. Edward's desire to create annuities with residual benefits. Appellant also asks us to determine whether James' estate had an interest in the residual benefits after his death. We hold the silence in J. Edward's will regarding residual benefits from the annuities did not create a latent ambiguity to give his trustee the ability to create them nor create the James III trust. We also hold the plain language of the will directed that half of J. Edward's estate be used to purchase annuities for James, and therefore James' estate has sole interest in the residual benefits from those annuities.

¶ 2 The relevant facts and procedural history of this case are as follows. J. Edward died on January 19, 2001. His will was probated on March 16, 2001. The will named J. Edward's brother, Joseph, as executor.

¶ 3 The will stated in relevant part:

I give the residue and remainder of my estate, real, personal and mixed, whether now owned or hereafter acquired, and wheresoever the same may be situate as follows:

A) To Daughter: To my daughter, KATHLEEN ERNST, I give one-half of my estate. If my daughter

KATHLEEN should predecease me, then this gift shall go to her children, ELIZABETH, CYNTHIA, ANDREW and MEGAN ERNST.

B) To Trustee: To my Trustee, my niece Elizabeth A. Hennessey, I give one-half of my estate, and direct that she shall use this to purchase an annuity for my son, JAMES E. HENNESSEY III, which will provide the maximum monthly payment to him over his lifetime. If my son, JAMES E. HENNESSEY III, should predecease me, then this gift shall lapse and this gift shall go in equal shares to JAMES' son, SEAN, and MEGAN and ERIN HENNESSEY, my nieces.

(Last Will and Testament of J. Edward Hennessey, executed October 8, 1999, at 1–2).

¶4 In accordance with the will, Elizabeth Hennessey ("Elizabeth"), as trustee, purchased two annuities for James' benefit totaling $134,000. The first annuity provided immediate monthly payments of approximately $800 to James for a term of fifteen years. The second annuity was to provide income to James after the first annuity concluded. The owner of the second annuity was the James III Trust, established by Elizabeth and Joseph, the executor of J. Edward's estate. Elizabeth was trustee for both annuities. The residual beneficiaries of both annuities in equal shares were: (1) Sean Hennessey ("Sean"), James' son and J. Edward's grandson; (2) Megan Hennessey ("Megan"), J. Edward's niece and Elizabeth's sister; and (3) Erin Hennessey ("Erin"), J. Edward's niece and Elizabeth's sister. James, the annuitant, died on July 31, 2003. Kathleen Ernst ("Kathleen"), his sister, was named administrator of his estate. On September 7, 2003, Kathleen and Sean filed a petition for citation to show cause why an account should not be filed. The trial court directed Elizabeth, as trustee of J. Edward's estate, to file her administration of the trust. Elizabeth complied with the order.

¶5 On May 3, 2004, Kathleen and Sean filed objections to Elizabeth's account, arguing Elizabeth and Joseph (executor of J. Edward's estate) executed a fraudulent trust agreement that named Erin, Megan, and Sean as remainder beneficiaries. The objection also requested the balance of the annuities, approximately $130,000, to be paid to James' estate. A hearing was held on September 20, 2004 on Kathleen's and Sean's objections. Elizabeth introduced evidence of a conversation in which J. Edward instructed Elizabeth to name Erin, Megan, and Sean as residual beneficiaries of James' annuity. Elizabeth sought to demonstrate she executed the annuity in accordance with J. Edward's wishes. Elizabeth also introduced evidence of a conversation in which she informed James of the creation of the James III Trust and he did not object. Both parties submitted memoranda concerning the admissibility of these conversations.

¶6 On January 18, 2005, the trial court found there was no latent ambiguity in the will. The trial court also determined there was no evidence James consented to the James III Trust. The trial court concluded Elizabeth had no authority to create the James III Trust, and accordingly nullified the trust. The trial court also reasoned that once James survived his father, he was entitled to all rights and benefits under the annuities. The court awarded the annuities' residuals to James' estate. Elizabeth filed a timely notice of appeal.

¶7 Appellant raises the following issues for our review:

IS THERE ADEQUATE AND COMPETENT EVIDENCE OF RECORD

FOR THE ORPHANS' COURT TO AWARD SURVIVOR BENEFITS TO [JAMES], OR HIS ESTATE, FROM ANNUITIES PURCHASED AS DIRECTED BY THE WILL OF [J. EDWARD]?

DOES THE LAW SUPPORT THE PAYMENT OF SURVIVOR BENEFITS TO [JAMES], OR HIS ESTATE, FROM ANNUITIES PURCHASED AS DIRECTED BY THE WILL OF [J. EDWARD]?

(Appellant's Brief at 4).

¶ 8 In her first issue, Elizabeth argues there is no evidence in the will that J. Edward intended half of his estate to go to James. Elizabeth believes the conversations between her and J. Edward should be considered to establish J. Edward's desire to distribute any residuals from James' annuities among Erin, Megan, and Sean. Elizabeth argues admitting this evidence would establish a latent ambiguity regarding a distribution of residual annuities that would ensure a maximum monthly payment to James. Elizabeth concludes she followed the directions in the will in accordance with J. Edward's wishes, and therefore the James III Trust should stand. We do not agree.

> Our standard of review from a final order of the orphans' court:

>> requires that we accord the findings of the orphans' court, sitting without a jury, the same weight and effect as the verdict of a jury; we will not disturb those findings absent manifest error; as an appellate court we can modify an orphan's court decree only if the findings upon which the decree rests are not supported by competent or adequate evidence or if there has been an error of law, an abuse of discretion, or a capricious disbelief of competent evidence.

*In re Benson,* [ ] 419 Pa.Super. 582, 615 A.2d 792, 793 (1992). Moreover, we will not reverse the trial court's credibility determinations absent an abuse of the court's discretion as fact-finder. *In re Ware,* 814 A.2d 725, 731 (Pa.Super.2002). On the other hand, we are not required to give the same deference to trial court's legal conclusions. *Id.* "Where the rules of law on which the [court] relied are palpably wrong or clearly inapplicable, we will reverse the [court's] decree." *Id.* (quoting *Horner v. Horner,* 719 A.2d 1101, 1103 (Pa.Super.1998)). *In re Trust of Hirt,* 832 A.2d 438, 447 (Pa.Super.2003).

¶ 9 The polestar this Court seeks to ascertain in every will is the testator's intent. *In re Estate of Schultheis,* 747 A.2d 918, 922 (Pa.Super.2000) (citing *In re Estate of Rider,* 711 A.2d 1018, 1021 (Pa.Super.1998), *appeal denied,* 563 Pa. 703, 761 A.2d 551 (2000)). So long as the intent is lawful, it must prevail. *Schultheis, supra.*

¶ 10 This Court must first look to the precise wording of the will to determine the testator's intent. *Id.* Great deference is given to the meaning of the words in the four corners of the will, and a court cannot determine what the testator might have desired by considering extrinsic evidence. *Id.* at 923. A court may consider extrinsic evidence, however, if such evidence would reveal a latent ambiguity in the will. *Id.* A latent ambiguity exists when extrinsic evidence renders the majority of a written document uncertain, even though the plain meaning of the document seemed clear. *Id.* (quoting *Krizovensky v. Krizovensky,* 425 Pa.Super. 204, 624 A.2d 638, 643 (1993)). However, the extrinsic evidence must only serve to clarify ambiguous terms within the will. *Schultheis, supra.* It "cannot be received as evidence of testator's intention indepen-

dent of the written words employed." *Id.* (quoting *In re Estate of Beisgen,* 387 Pa. 425, 431, 128 A.2d 52, 55 (1956)). If a will is silent regarding a particular contingency, a court cannot "rewrite a will to supply a testator's unexpressed intent, or to cover circumstances or conditions or contingencies which he apparently did not foresee or provide for." *Sowers' Estate,* 383 Pa. 566, 570, 119 A.2d 60, 63 (1956). Silence in a will does not, in itself, create an ambiguity. *Id.*

■ ¶ 11 In *Schultheis,* this Court found a latent ambiguity in the testator's will. The testator will gave "[his] shares of stock" to nine devisees and his residual estate to the appellants. *Schultheis, supra* at 920. The will designated amounts of the shares of stocks to each devisee, which totaled 2,045 shares. *Id.* An additional 1,243 shares were discovered after testator's death, and the executor distributed the shares *pro rata* to the devisees. *Id.* Appellants argued the 1,243 extra shares were residual and should have been delivered to them. *Id.* The trial court admitted parol evidence from the testator's attorney that the testator believed he owned only 2,045 shares of stock and meant to give all of his shares of stock to his devisees. *Id.* at 921. This Court affirmed the trial court's decision, holding there was a mistaken understanding that the testator owned 2,045 shares and his intent was to grant all his shares to his devisees. *Id.* at 924.

¶ 12 Conversely, the Pennsylvania Supreme Court determined there was no latent ambiguity where extrinsic evidence directly contradicted the clear meaning of the testator's will. *Estate of Schwenk,* 507 Pa. 409, 415, 490 A.2d 428, 431 (1985). In *Schwenk,* the testator established a trust from which income provided compensation to the trustee. *Id.* at 414, 490 A.2d at 430. The trial court permitted a letter written by the trustee to the testator that demonstrated the trustee was to be paid against the principal of the trust. *Id.* The trial court found a latent ambiguity and ordered the trustee to be paid against the principal. *Id.* at 412, 490 A.2d at 429. The Supreme Court reversed, concluding that while extrinsic evidence contradicted the clear meaning of the will, it did not create any ambiguity as to the meaning of the will itself. *Id.* at 416, 490 A.2d at 431. Therefore, the Court held the letter was not admissible. *Id.*

¶ 13 In the instant case, the contingency that James must outlive J. Edward to receive the annuity did, indeed, vest. Therefore, Elizabeth was to create an annuity for James. The fact that J. Edward did not account for the possibility of Elizabeth creating the annuity with residual benefits does not create an ambiguity in the will itself. *See Schwenk,* 507 Pa. at 416, 490 A.2d at 431; *Sowers, supra* at 570, 119 A.2d at 63. In addition, J. Edward's silence on residual benefits of the annuity does not permit this Court to rewrite his will to supply an unexpressed intent. *Sowers, supra* at 570, 119 A.2d at 63. Accordingly, the trial court correctly determined there is no ambiguity in the will, and Elizabeth had no power to create the James III Trust absent specific instruction from James.

¶ 14 Although Elizabeth stated she informed James of the James III Trust, she did not show or send James a copy of the trust. Their conversations, however, consisted solely of James' concerns that he received his income from the annuity. There is no evidence that James gave his consent to create the James III Trust and name Sean, Megan, and Erin as residual beneficiaries. Accordingly, the trial court did not err in finding the James III Trust was a nullity.

¶ 15 In her second issue, Elizabeth argues James had an interest only in the annuity payments, not the principal. Elizabeth concludes James' interest in the annuity ended when he died, and James' estate has no interest in the residual benefits. We disagree.

¶ 16 An annuity generally designates a right to receive fixed, periodic payments either for the annuitant's life or for a certain number of years. *Commonwealth v. Beisel,* 338 Pa. 519, 521, 13 A.2d 419, 421 (1940). The annuitant usually has an interest only in the payment, not the principal from which the payments are derived. *Id.* In traditional annuities, nothing remains after the annuitant's death. *Bayer's Estate,* 345 Pa. 308, 314, 26 A.2d 202, 205 (1942). However, an annuity can provide for any residual balance to be paid to the annuitant's beneficiary upon the annuitant's death. *Id.*

¶ 17 In the instant case, the trial court found the will instructed Elizabeth only to create an annuity for James to provide the maximum monthly payment to him over his lifetime. Elizabeth created the annuity with residual benefits, and we must determine to whom those benefits are to be paid. The trial court correctly found J. Edward's will provided for his two children, Kathleen and James, even though James was to receive his share of the estate in the form of the annuity. Megan, Sean, and Erin had an interest in the will only if James predeceased J. Edward. Because James survived J. Edward, the interest of Megan, Sean, and Erin in J. Edward's estate ceased. Elizabeth had no authority to name them as residual beneficiaries of the annuities. Therefore, the trial court correctly determined the residual benefits should transfer to James' estate.

¶ 18 For the foregoing reasons, we hold J. Edward's silence in the will regarding residual annuities did not create a latent ambiguity in the will to give Elizabeth the ability to create annuities with residual benefits nor create the James III trust. We also hold the plain language of the will provided half of J. Edward's estate in annuities for James, and therefore James' estate has sole interest in the residual benefits from those annuities. *See Hirt, supra; Schultheis, supra; Sowers, supra; Schwenk, supra.* Accordingly, we affirm the trial court's order nullifying the James III trust and awarding the residual benefits to James' estate.

¶ 19 Order affirmed.